340 So.2d 1353 (1976)
STATE of Louisiana, Appellee,
v.
Roger FREDERICK, Appellant.
No. 58220.
Supreme Court of Louisiana.
December 13, 1976.
Sue Fontenot, Abbeville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J., Nathan Stansbury, Dist. Atty., Richard J. Putnam, Jr., Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Frederick was convicted of distribution of marijuana (hashish), La. R.S. 40:966, and sentenced to eight years at hard labor. Upon the defendant's appeal, we find reversible merit presented by his assignment of error no. 1, relating to admission into evidence of unrelated other crimes. See also assignments 5 and 8, insofar as relating to this issue.
*1354 Facts
Frederick is charged with the unlawful distribution of marijuana on August 5, 1975. Kelly, an undercover agent, testified that at 11:45 a. m. that date he went to a residence where Frederick was staying, told Frederick he wished to buy a gram of hashish, waited while Frederick went upstairs, and then went outside with Frederick. There, beside Kelly's vehicle, Frederick sold him a tinfoil package for $7.00.
The remainder of the state's evidence as to this transaction was: The testimony of Officer Vice, to whom Kelly reported and transferred the package; and the testimony of laboratory witnesses identifying receipt of the package and analysis of its contents as hashish.
After this evidence was introduced, pursuant to a chambers conference formally notifying the defendant's counsel of the state's decision to use other-evidence testimony (pursuant to a pre-trial Prieur notice and full and commendable disclosure by the state of the circumstances of the other offenses which the state might use), the state over, objection of the defense, sought to prove through the testimony of Kelly, recalled on redirect, three other unwitnessed transactions whereby Kelly had acquired marijuana from the defendant Frederick:
(1) An incident of June 3, 1975, at a record shop, where Kelly first met Frederick (who was giving or selling a bag of marijuana to a third person): Upon Kelly's statement that he himself wanted two bags, Frederick told him to step outside and get into Frederick's automobile. There, Kelly obtained two bags of marijuana from a paper bag under the seat and paid Frederick $30.00 for them.
(2) An incident of June 13, in the Pub Lounge (part of the downstairs of the building housing the residence where the present August 5 offense charged allegedly took place): Kelly sat with Frederick drinking together at the bar for two and a half hours, after which Frederick gave him a marijuana joint (cigarette).
(3) An incident of July 31, at the Pub Lounge: While Kelly was drinking there, Frederick came into the bar and asked Kelly if he was interested in some hashish. They walked outside to the front door of the adjacent residence (where the August 5 offense is alleged to have taken place), where Kelly bought a tinfoil packet of hashish for $7.00.
The only other evidence offered by the state was the testimony of Officer Vice that the respective items had been given to him by Kelly, and the testimony of laboratory witnesses as to the chain of custody and analysis of the contents as marijuana or hashish respectively.
The Defense
The defendant's essential defense, by cross-examination and argument of counsel, was to attack the credibility and credentials of Kelly and, by these means, to contend that no such August 5 transaction took place, unwitnessed as it was and depending for proof solely upon Kelly's credibility.
The defendant himself did not take the stand. (In brief, his counsel points out that, if he was innocent of the August 5 offense (the only one for which on trial) but possibly guilty of one or more of the other incidents, he could not take the stand to defend his innocence without subjecting himself to questioning as to these other offenses.)
However, the defendant did produce as witness on his behalf an experienced police officer, conceded to be an expert in police procedures. This officer testified that the undercover narcotics operation represented by the state's evidence was not in accord with proper police procedure. The alleged defects included: the use of an undercover police agent with a police record (albeit, concerning only a misdemeanor) to make an unwitnessed (and thus uncorroborated) one-on-one purchase; the lack of supervision and controls over the reliability of the evidence, such as: the failure to require before (as well as after-) reports to the supervisor; the failure to verify the absence of any possession of an illegal drug by the *1355 undercover agent prior to the alleged transaction; etc.[1]
Legal Principles
The state must prove beyond a reasonable doubt the accused's guilt of the specific crime charged. La.Const. of 1974, Art. 1, Section 16. Proof of present guilt may not properly be made by evidence of general bad character or of prior criminal record or of other criminal activity independent of the present offense. State v. Prieur, 277 So.2d 126 (La.1973).
Therefore, evidence of other crimes is inadmissible except under limited special exceptions, such as when they form part of the res gestae, are convictions admissible solely for impeachment purposes, or (pertinent to the present issue) are acts relevant to prove intent, knowledge, or system with regard to the specific offense charge under La.R.S. 15:445, 446. Even then, evidence of other crimes may be introduced for the limited permissible purposes only with procedural safeguards set forth by Prieur, and then only if the probative value of such testimony outweighs its prejudicial effect.
See: State v. Moore, 278 So.2d 781 (La. 1973); State v. Prieur, 277 So.2d 126 (La. 1973). See also: State v. Slayton, 338 So.2d 694 (La.1976) (docket no. 58,054, November 8, 1976); State v. Gaines, 340 So.2d 1294 (La.1976); State v. Clark, 338 So.2d 690 (La.1976); State v. Waddles, 336 So.2d 810 (La.1976).
As these decisions indicate, because of the grave risk of substantial impairment of the constitutional presumption of innocence, evidence of other crimes to prove knowledge, intent, or system under La.R.S. 15:445, 446 is admissible only under these specific exceptions, strictly construed so as to require a "showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered." State v. Prieur, cited above, at 277 So.2d 130.

Application of Legal Principles to Present Facts
Under these principles, the evidence of the only-somewhat similar other drug offenses was not admissible to prove either intent or guilty knowledge with regard to the present offense, the only purposes for which offered.
The unambiguous eyewitness testimony offered by the state is to the effect that the offender sold hashish to the state undercover agent, fully knowing that the substance sold was an illegal drug. The requisite general criminal intent is established by mere proof of the voluntary distribution. State v. Banks, 307 So.2d 594 (La. 1975).
Thus, in the absence of a defense that the act was done without knowledge of the illegality of the substance, "intent" or "knowledge" were not genuine matters at issue. State v. Slayton, State v. Gaines, and State v. Clark, cited above.
Nor did defendant's plea of "not guilty", without more, make evidence of extraneous offenses admissible to prove "intent" or "guilty knowledge". State v. Clark and State v. Moore, cited above. To permit the exceptionally-permitted evidence of extraneous offenses, the evidence must indicate that these are real and genuine matters at issue, independent of the defendant's general claim of innocence posed by his plea of not guilty. "`The mere theory that a plea of not guilty puts everything material at issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defenses in order to rebut them at the outset with some damning piece of evidence.'" State v. Moore, cited above, at 278 So.2d 785-86.
The defendant's defense was not that the act was done without intent or guilty *1356 knowledge. It was that no act at all had occurred.
The effect of the state's evidence of other crimes was not to prove the prerequisite intent or knowledge for the offense. It was instead to prove that the offense itself occurred, because: If the defendant had dealt in marijuana on three other occasions, then the undercover's uncorroborated testimony that he dealt in it on the present occasion (the only offense charged) must be true.
The evidence is inadmissible for such purpose. As we stated in State v. Gaines, cited above, at 340 So.2d 1294:
"These statutes [La.R.S. 15:445, 446] and the jurisprudence construing them rest on the proposition that if the sole relevance of other acts is to prove the defendant's criminal disposition, then the evidence is inadmissible character evidence. Although it can be effectively argued that evidence of other offenses is inadmissible because it is irrelevant to any issue in the trial for the crime charged, it can also be argued that this character evidence is relevant to guilt generally, because, having committed this kind of crime before, the defendant is at least capable of the criminal activity charged. Under either analysis, however, the evidence has been uniformly excluded due to the fact that the evidence presents an inordinate risk of prejudice. The prejudice results from various factors, among which are: (1) the strong possibility that the jury will be unduly swayed in its determination of guilt merely because the defendant is a `bad man', (2) the possibility that the evidence may confuse the jury in collateral issues and detract their attention from the main issue of the defendant's guilt for the crime charged, * * *.
"Therefore, accepting the argument that this evidence is highly relevant, the evidence is nonetheless excluded, not because it fails to tend to prove the defendant's guilt, but because it does it too well and thereby deprives the `bad man' of the fair trial and benefit of the presumption of innocence and the State's burden of proof. * * *"
Authorities Cited in State's Supplemental Brief
The scholarly and persuasive supplemental brief of the state contends that the cited Louisiana decisions have unduly narrowed the admissibility of other-crimes evidence. Cited to us are 2 Weinstein's Evidence, 404[8]-[10] (1975) and McCormick on Evidence, Section 190 (2d ed. 1972).
Nevertheless, in our opinion, these authorities support the exclusion in the instant case of the evidence of the other crimes.
Weinstein, for instance, notes that othercrime evidence is never admissible to prove the evidential hypothesis that "a man with such a defect of character is more likely than men generally to have committed the act in question." p. 404-40. To prove criminal intent, it is true, "evidence of another crime which tends to undermine defendant's innocent explanation for his act will be admitted" p. 404-50but here, the defendant does not defend by an innocent explanation for an act, he denies any act at all occurred. Again, "Knowledge is properly in issue [only] when defendant's claim is that he was unaware that a criminal act was being perpetrated", p. 404-52but the examples illustrated by the footnote citation all concern instances where by way of affirmative defense the defendant claimed an innocent explanation for an undoubtedly unlawful act (see our decision in State v. Slayton, cited above, for this distinction); unlike the present, where the defendant denies any act at all took place.
In short, the other-crime evidence is not admissible unless it tends to prove or disprove "a proper consequential fact" at issue in the case. 2 Weinstein, p. 404-42. Even then, "the probative force of the othercrime evidence must be assessed", p. 404-46, with the evidence to be excluded if unfairly prejudicial with relation to its probative value, Id. at Section 404[10].
The threshold issue posed by Weinstein is whether the other-crime evidence is probative to "the existence of any fact that is of consequence to the determination of the action." Federal Rule of Evidence 401.
*1357 Here, the only fact sought to be proved by the other-crime evidence is that Frederick indeed committed the present crimehowever skillfully the prosecutor in brief attempts to characterize the evidence as probative of Kelly's credibility or of the police competence in securing evidence by an unwitnessed buy or of the "necessity" of such other evidence due to the lack of corroborating witnesses.
The other-crime evidence was thus not admissible for any recognized purpose, such as the ten illustrative examples set forth by McCormick, pp. 448-50. Indeed, it falls within the prohibited inadmissible evidence described by McCormick, p. 447:
"The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character". Evidence of other crimes is thus inadmissible where, as here, it is introduced to prove that the accused committed the present crime because he had committed similar or other crimes in the past.
Conclusion
We therefore find reversible error presented by Assignment No. 1, because the evidence of other crimes committed by the accused was probative of no other fact at issue than one prohibited by our constitution, laws, and jurisprudence: That, by reason of his past guilt of other offenses, the accused is also guilty of the present crime for which (alone) he is charged and was tried.
Accordingly, we reverse the conviction and sentence, and we remand for a new trial in accordance with law.
REVERSED AND REMANDED.
NOTES
[1] In rebuttal, the state offered testimony of a narcotics officer to the effect that a substantial number of drug-cases were in fact "made" with procedures similar to the present.