McDonald, j.
 

 |2The defendant, Terrence Roshun Scott, was charged by bill of information with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1) (Count 1), and illegal carrying of weapons while in possession of marijuana, a violation of La. R.S. 14:95(E) (Count 2). The defendant pled not guilty. Following a jury trial, he was found guilty of the responsive offenses of attempted possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1) and La. R.S. 14:27 (Count 1), and attempted illegal carrying of weapons, a violation of La. R.S. 14:95(E) and La. R.S. 14:27 (Count 2).
 
 See
 
 La. R.S. 40:979. For the attempted possession with intent to distribute cocaine conviction, the defendant was sentenced to five years at hard labor with two years of the sentence suspended. Of the remaining three years, the first two years were ordered to be served without benefit of parole. For the attempted illegal carrying of weapons conviction, the defendant was sentenced to five years at hard labor with two years of the sentence suspended. The remaining three years of this sentence were ordered to be served without benefit of parole. The sentences were ordered to run concurrently. The defendant now appeals, designating three assignments of error. After a careful consideration of the record, we find
 
 *1092
 
 reversible error. Therefore, we reverse the defendant’s convictions, vacate the sentences, and remand.
 

 FACTS
 

 On April 25, 2007, Sergeant Fred Ohler,
 
 [1]
 
 with the Slidell Police Department, executed, with the assistance of the St. Tammany Parish Sheriffs Office, a search warrant at 864 Hailey Avenue in Slidell. The house at this address belonged to Peggy Rudolph, who was in a relationship with the defendant. Present at the house during the execution of the search warrant were Rudolph, the defendant, Darlene | ^Charles, and Rudolph’s two small children. The defendant was found in the master bedroom. Sergeant Ohler found crack cocaine on the headboard of the bed in the master bedroom and a .38 revolver in the box spring underneath the bed. Marijuana was found on top of the bed. Two razor blades with suspected crack cocaine residue were found near the bed. Also found in the bedroom was a Sprint phone bill addressed to the defendant at the 864 Hai-ley Avenue address. In another bedroom, officers found crack cocaine and a P-25 semi-automatic handgun in the closet. The total amount of crack cocaine found was 21.41 grams. The total amount of marijuana found was 2.27 grams.
 

 Probable cause for the search warrant was based on three drug sales prior to the execution of the search warrant on April 25, 2007. The three drug transactions, wherein the defendant allegedly sold crack cocaine to undercover officers, took place on March 13, 2007, April 24, 2007, and April 25, 2007, at Rudolph’s house. On the first transaction, according to Detective Ohler, he was in an undercover capacity with a confidential informant. He drove to Rudolph’s house, and the confidential informant purchased $100 worth of crack cocaine from the defendant. Detective Ohler testified at trial that he observed the defendant during the transaction. Detective Daniel Chauvin, Jr., with the St. Tammany Parish Sheriffs Office, testified at trial. According to Detective Chauvin, on the April 24 transaction, he was in an undercover capacity with the confidential informant. Detective Chauvin observed the confidential informant purchase $80 worth of crack cocaine in the doorway under the carport of Rudolph’s house. In the final April 25 transaction, Detective Chauvin did not witness the transaction because the confidential informant went inside the house to purchase $60 worth of crack cocaine. Detective Chauvin testified that, following the transaction, the confidential informant told him that the defendant was the person who sold her the crack inside the house.
 

 RRudolph testified at trial that the defendant did not live at her house. She testified she lived for about four months at the Hailey address with her four children, including her twenty-year-old son, James Rudolph. Also, Darlene Charles, a friend of Rudolph’s sister, stayed with her for three or four days. Rudolph testified that the gun found in the box spring belonged to Jermaine Cannard, who was living at her house on March 13. She stated she knew nothing about the cocaine or the other gun found in her house. She testified that the defendant had purchased a Sprint cell phone for her, but that she paid the bill.
 

 The defendant testified at trial that he did not live at Rudolph’s house. He was only at her house briefly to check on her children when the police arrived with the search warrant. He denied knowing anything about there being drags in the house when he went there on April 25. He
 
 *1093
 
 testified he did not make any statement to the police when he was arrested. He denied selling any drugs on March 13, April 24, and April 25. He testified he helped Rudolph get her Sprint cell phone and her cable. He had a prior conviction for possession of marijuana.
 

 ASSIGNMENT OF ERROR NO. 1
 

 In his first assignment of error, the defendant argues the trial court erred in allowing evidence of other crimes with no
 
 Prieur
 
 notice or hearing. Specifically, the defendant contends that the remarks made by the prosecutor during her opening statement about the three drug sales the defendant allegedly participated in prior to the execution of the search warrant constituted impermissible references to other crimes evidence.
 

 In her opening statement, the prosecutor commented on three drug sales, each taking place on a different day, involving the defendant and an undercover agent. These drug sales by the defendant, according to the prosecutor, were used as probable cause to obtain a search warrant. Upon execution of the search warrant at the house where the defendant allegedly conducted these three drug transactions, 15officers found drugs and a gun, which was the evidence used to charge the defendant in the instant prosecution.
 

 At the conclusion of the prosecutor’s opening statement, defense counsel moved for a mistrial. He argued the prosecutor had made references to three different drug sales for which the defendant was not being prosecuted. He also pointed out there had been no prior notice of other crimes evidence being introduced or offered at this trial. The prosecutor responded that the search warrant, which would be introduced into evidence, contained all three drug sales, although the defendant was not charged with those drug sales. The prosecutor also argued that the prior drug sales constituted res gestae. The trial court denied the motion for mistrial.
 

 During trial, there was extensive testimony throughout the trial referencing the three drug sales. Early in the trial, when Sergeant Ohler testified about his involvement in the first (March 13) drug buy, defense counsel lodged a continuing objection regarding the admissibility of this other crimes evidence: ‘Tour Honor, I’m going to ask the Court to note my continuing objection to the transaction scheme, the conversation or testimony about transactions.”
 

 Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition.
 
 State v. Lockett,
 
 99-0917, p. 3 (La.App. 1st Cir.2/18/00), 754 So.2d 1128, 1130,
 
 writ denied,
 
 2000-1261 (La.3/9/01), 786 So.2d 115.
 

 Louisiana Code of Evidence article 404(B)(1) provides:
 

 | f,Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at
 
 *1094
 
 trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 

 Prior to the amendment of La. Code Evid. art. 404(B)(1) by Act 51 of the Third Extraordinary Session of 1994
 
 [2]
 
 , the prosecution, within a reasonable time before trial, was required to furnish in writing to the defendant a particularized statement of the other acts or offenses it intends to offer specifying the exception to the general exclusionary rule upon which it relies for their admissibility.
 
 See State v. Prieur,
 
 277 So.2d 126, 130 (La.1973). Our review of the record indicates there was no pretrial
 
 Prieur
 
 hearing. However, the record indicates the State filed a combined answer to motions for discovery and notice of intent to introduce evidence of other offenses. In its answer, the State provided “open file” discovery. It also provided the following regarding its intent to introduce other crimes evidence:
 

 The State gives written notice of its intent to introduce evidence of other offenses admissible under L.C.E. Article 404 as described in the attached discovery. Such evidence is admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or is an integral part of the act or transaction that is the subject of the current proceeding.
 

 It appears defense counsel was given fair notice of the State’s intention to introduce other crimes evidence. We also note that under La. Code Evid. art. 404(B)(1), the prosecution shall provide reasonable notice of its intent to introduce other crimes evidence provided that the accused has requested such notice. We |7can find nothing in the record to indicate that defense counsel requested such notice. Since the State gave defense counsel notice of its intention to introduce other crimes evidence, it is the defendant’s burden to request a
 
 Prieur
 
 hearing. Having failed to do so they cannot claim a lack of notice now.
 

 However, the issue of
 
 Prieur
 
 notice of the State’s intent to use other crimes evidence is separate and independent of the question of the admissibility of the evidence. Although a pretrial evidentiary hearing to determine the admissibility of such evidence is preferable, such a hearing is not always required.
 
 See State v. Addison,
 
 551 So.2d 687, 692 (La.App. 1st Cir.1989),
 
 writ denied,
 
 573 So.2d 1116 (La.1991).
 

 Notwithstanding the failure to hold a pretrial
 
 Prieur
 
 hearing in this case, we find the other crimes evidence of the three drug sales was inadmissible. The three drug transactions, wherein the defendant allegedly sold crack cocaine to undercover officers, took place March 13, April 24, and April 25, all in 2007. The search warrant was executed April 25, 2007. Under these facts, we find, contrary to the prosecutor’s argument to the trial court during her opening statement, that these criminal acts do not form part of the res gestae.
 

 To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before
 
 *1095
 
 or after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after commission of the crime, if the continuous chain of events is evident under the circumstances.
 
 Addison,
 
 551 So.2d at 690-91. The March 13 drug transaction occurred almost one and a half months prior to the execution of the search warrant. The April 24 drug transaction occurred the day before the search warrant was ^executed. The prosecutor, therefore, did not establish in her opening statement that the “other crimes” were necessary incidents or immediate concomitants of the charged offenses or that it formed, in conjunction with the charged offenses, one continuous transaction. Additionally, the prosecutor failed to show the “other crimes” were related and intertwined with the charged offenses to such an extent the State could not have accurately presented its case without reference to them.
 
 See Addison,
 
 551 So.2d at 691-92.
 

 We find further that the other crimes evidence had no independent relevancy besides simply showing a criminal disposition.
 
 See State v. Lafleur,
 
 398 So.2d 1074, 1080 (La.1981). When the defendant was arrested upon execution of the search warrant and Detective Ohler asked the defendant if the drugs found were his, the defendant did not reply. He stated only, according to Detective Ohler, that he was going to take the ride on this. The defendant testified that he made no statement. On cross-examination, when asked if it was true that he never told the police the drugs were not his, the defendant responded, “I never told them. I did not say anything. I didn’t make a statement.” Considering the defendant’s “not guilty pleas” and his refusal to make any substantive statements to police officers regarding who possessed the drugs or gun, or how they came to be in the house, the theory of the defendant’s case, it would seem, amounted to nothing more than a blanket denial of being in possession of drugs or the gun. In the absence of a defense that the act was done without knowledge of the illegality of the substance, or that, while he may have possessed the drugs, there was no intent to distribute them, intent or knowledge were not genuine matters at issue herein.
 
 See State v. Frederick,
 
 340 So.2d 1353, 1355 (La.1976).
 
 See also State v. Martin,
 
 377 So.2d 259, 263 (La.1979);
 
 State v. Slayton,
 
 338 So.2d 694, 695-98 (La.1976);
 
 State v. Clark,
 
 338 So.2d 690, 692-93 (La.1976). The
 
 Frederick
 
 Court, 340 So.2d at 1355, further stated:
 

 IsNor did defendant’s plea of ‘not guilty’, without more, make evidence of extraneous offenses admissible to prove ‘intent’ or ‘guilty knowledge’. To permit the exceptionally-permitted evidence of extraneous offenses, the evidence must indicate that these are real and genuine matters at issue, independent of the defendant’s general claim of innocence posed by his plea of not guilty. “The mere theory that a plea of not guilty puts everything material at issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defenses in order to rebut them at the outset with some damning piece of evidence.” [Citations omitted].
 

 Identity was also not an issue because the defendant did not contest his identity. The evidence of the prior drug sales was not so similar as to establish a pattern or system, and even if relevant to these issues, pattern or system would primarily be used to help establish identity which, as noted, was not an issue.
 
 See Lockett,
 
 99-0917 at p. 5, 754 So.2d at 1131.
 
 See also State v. Jacobs,
 
 99-0991, p. 26 (La.5/15/01), 803 So.2d 933, 952,
 
 cert. denied,
 
 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002)
 
 *1096
 
 (where the supreme court found other crimes evidence was admissible to prove a consequential fact truly at issue in the case in that the evidence was highly probative in
 
 rebutting the primary defense
 
 of mis-identification of defendant as the trigger-man (Italics ours)). Further, none of the other examples provided in La. Code Evid. art. 404(B)(1), which would allow for the admissibility of other crimes evidence, are applicable in this case.
 

 We also find that the admission of the three prior drug sales into evidence was not harmless error. These three drug sales were discussed extensively throughout the trial. The audio of the drug buys on April 24 and April 25 was played for the jury. Since the defendant made no incul-patory statements upon his arrest, and since several other people were living in the house during the time period of the drug sales, including two other men besides the defendant, it cannot be ruled out that the jury decided the defendant was a bad man who had committed other drug offenses in the past.
 
 See Lockett,
 
 99-0917 at p. 7, 754 So.2d at 1132. Both of the jury’s responsive verdicts of the attempted charged offenses seem to |10suggest the lack of a strong evidentiary case presented by the State. Accordingly, we cannot conclude that the guilty verdicts actually x*en-dered in this trial were surely unattributable to this error.
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
 

 The trial court erred in allowing into evidence at trial the alleged three prior drug sales by the defendant. Also, the error was not harmless beyond a reasonable doubt. Therefore, these convictions must be reversed and the case remanded to the trial court for a new trial.
 

 This assignment of error has merit.
 

 ASSIGNMENT OF ERROR NO. 2
 

 In his second assignment of error, the defendant argues the court erred in not requiring the State to reveal the identity of the confidential informant used in the controlled drug buys. Having found reversible error, we normally would pre-termit consideration of all remaining assignments of error. However, because there is a high probability that the issue raised in this assignment of error will arise again on remand, we will consider this issue now.
 
 See State v. Griffin,
 
 2007-0974, p. 21 (La.App. 1st Cir.2/8/08), 984 So.2d 97, 114.
 

 Initially, we note that a review of the record indicates the defendant failed to file a motion requesting the identity of the confidential informant. It appears the first time defense counsel raised this issue was following the prosecutor’s opening statement and prior to the defense counsel’s opening statement. The relevant colloquy is as follows:
 

 By Mr. Perkins [defense counsel]: One other thing—I’ll get back to that. Note my objection. This is it. If she is going to talk about drug charges, in discovery, no officer purchased any drugs. There was [a] confidential informant used who was the medium, who made the transactions. If she wants to talk about drug sales, the confidential informant was an integral part. I want the name of the confidential informant. I am entitled to that.
 

 By the Court: We’ll talk about that later.
 

 [1TIn his brief, the defendant quotes the following objection during the trial made by defense counsel:
 

 By Mr. Perkins: Your Honor, I’m going to ask the Court to note my continuing objection to the transaction scheme, the
 
 *1097
 
 conversation or testimony about transactions.
 

 By the Court: So noted.
 

 We presume the defendant is suggesting in brief that the foregoing objection by defense counsel preserved the issue regarding the identity of the confidential informant. However, we find neither defense counsel’s comment to the trial court during opening statements, nor the subsequent objection to conversation about drug transactions, properly preserved the issue of whether the State was required to reveal the identity of the confidential informant. It is well-settled that defense counsel must state the basis for an objection when it is made, pointing out the specific error to the trial court. The grounds for objection must be sufficiently brought to the court’s attention to allow it the opportunity to make the proper ruling and prevent or cure any error. Because the defendant failed to object to this issue at trial, it cannot now be urged on appeal.
 
 See
 
 La. Code Evid. art. 103(A); La. Code Crim. P. art. 841(A);
 
 State v. LeBlanc,
 
 618 So.2d 949, 958-59 (La.App. 1st Cir. 1993),
 
 writ denied,
 
 95-2216 (La.10/4/96), 679 So.2d 1372.
 

 Moreover, even if the defendant had properly preserved the issue for appeal, we would find the contention baseless. As a general rule, the State is not required to divulge the name of a confidential informant to the accused. However, an exception is made when the confidential informant was a participant in an illegal drug transaction.
 
 State v. Buffington,
 
 452 So.2d 1313 (La.App. 1st Cir.1984).
 

 In the instant matter, a confidential informant participated in the three controlled drug buys, which were subsequently used as the source of probable cause for the search warrant. However, the charges in this case were based on the evidence seized in the search of the residence where the defendant was found, not [12on any evidence seized from the controlled drug buys between the confidential informant and the defendant. The confidential informant did not play a crucial role in the transaction (i.e., the search) that led to the defendant’s arrest because she played no part in the execution of the search warrant and the subsequent search.
 
 See State v. Clark,
 
 2005-61, pp. 13-14 (La.App. 5th Cir.6/28/05), 909 So.2d 1007, 1015-16,
 
 writ denied,
 
 2005-2119 (La.3/17/06), 925 So.2d 538.
 
 See also State v. Diliberto,
 
 362 So.2d 566, 567-68 (La.1978);
 
 State v. Jackson,
 
 94-1500, pp. 7-8 (La.App. 4th Cir.4/26/95), 654 So.2d 819, 823,
 
 writ denied,
 
 95-1281 (La.10/13/95), 661 So.2d 495. Accordingly, the State would not have been required to divulge the name of the confidential informant. This assignment of error is without merit.
 

 ASSIGNMENT OF ERROR NO. 3
 

 In his third assignment of error, the defendant argues the trial court erred in denying his motion for a mistrial. Specifically, the defendant contends the trial court should have granted his motion for a mistrial because, in her questioning of the defendant on cross-examination, the prosecutor suggested the defendant was arrested for possession of a handgun and marijuana, but only convicted for the possession of marijuana.
 

 The exchange at issue occurred during the cross-examination of the defendant:
 

 Q. Why didn’t you point things to them?
 

 A. Didn’t you understand what I was— I just came in and got violated. I never went through police procedures like I went through just then. I was sitting there eating my chips and minding my business, and I got hit in my jaw like with cuffs—
 

 
 *1098
 
 Q. When you got caught with the gun and the marijuana that you pled to the marijuana, you never had—
 

 Mr. Perkins: Objection, Your Honor.
 

 Ms. Knight [prosecutor]: not at that time?
 

 * * * ⅜ * ⅛
 

 Mr. Perkins: Your Honor, Ms. Knight’s questions when he got stopped with a gun and the marijuana before then, that’s my main objection. He’s admitted that he pled guilty to it.
 

 | isThe Court: What is the objection?
 

 Mr. Perkins: My objection is that it’s irrelevant and it’s prejudicial—
 

 The Court: Objection overruled, [cross-examination continued]
 

 Q. So you said you’ve never been involved with police procedure. You were arrested with a gun, and drugs, and marijuana before this case when police were involved, correct?
 

 A. I was arrested. Yes, ma’am, I was arrested.
 

 Q. That’s marijuana we are talking?
 

 Mr. Perkins: Your Honor, I will make another objection for the record—
 

 Q. —that you pled to?
 

 A. Yes, yes, ma'am.
 

 Mr. Perkins: — that it’s inadmissible to bring up prior arrests where there are no convictions.
 

 Ms. Knight: I’m doing that to—
 

 Mr. Perkins: It’s prejudicial, Your Hon- or.
 

 Ms. Knight: — Impeach Mr. Scott’s statement that he hadn’t been through police procedure before.
 

 [Defendant]: Like that before.
 

 The Court: Objection sustained. The jury will disregard that question and answer.
 

 Following the conclusion of all testimony and prior to closing arguments, the following exchange took place:
 

 Mr. Perkins: First of all, I would like to move the Court for a mistrial based on the questions asked by the prosecutor relating to the prior arrest for which he had not been convicted, the gun charge, that she put before the jury.
 

 Ms. Knight: Your Honor, my response would be based on — I believe the door was opened by [defendant]. He said that he didn’t answer the police, he didn’t give them any information, because he’s never been involved in a police situation, and that’s I asked him [sic] if he had had a prior experience with police situations. And that’s why I asked him was that the arrest he was talking about that he was involved in. Mr. Perkins: She specifically—
 

 Ms. Knight: And then I pointed out that it was the mai'ijuana he already pointed out. It wasn’t something else.
 

 The Court: First of all, I need to say I sustained the objection. I admonished the jury to disregard the question and the answer. I don’t think it was proper to ask him about arrests with no conviction, and I think that’s sufficient. Motion for Mistrial is denied.
 

 Louisiana Code of Criminal Procedure article 770 provides in pertinent part:
 

 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
 

 [ 14(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
 

 
 *1099
 
 [[Image here]]
 

 An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
 

 La. Code Evid. art. 609.1 entitled “Attacking credibility by evidence of conviction of crime in criminal cases,” provides in pertinent part:
 

 A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
 

 B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
 

 On direct examination, the defendant testified that he had a previous conviction for possession of marijuana. On cross-examination, the defendant admitted that he pled guilty to the possession of marijuana charge. Accordingly, pursuant to La. Code Evid. art. 609.1(B), the prosecutor was permitted to question the defendant about his prior possession of marijuana conviction. However, during this line of questioning, the prosecutor suggested the defendant either had a gun charge or was arrested for carrying a gun.
 
 [3]
 
 In either case, whether it was a drug arrest while the defendant was carrying a gun or a gun charge subsequently dropped, the reference to an ostensible gun charge or arrest was improper.
 

 The prosecutor argued at trial that the defendant denied having ever been through police procedure and, as such, opened the door for questioning about such police procedure, including when he was arrested with a gun and marijuana. Therefore, according to the prosecutor, she questioned the defendant about the | <fiarrest to impeach his “statement that he hadn’t been through police procedure before.”
 

 The application of La. Code Evid. art. 609.1 is limited to evidence of prior convictions in connection with impeachment of the credibility of a witness.
 
 See State v. Powell,
 
 28,788, p. 9 (La.App. 2d Cir. 11/1/96), 683 So.2d 1281, 1286,
 
 writ denied,
 
 97-0092 (La.5/30/97), 694 So.2d 243. Such evidence does not extend to prior arrests or charges.
 
 See
 
 La. Code Evid. art. 609.1(B). Moreover, we do not find the defendant opened the door to being impeached by the prosecutor. The defendant did not testify that he had never before gone through police procedure; rather he testified, “I just came in and got violated. I never went through police procedures like I went through just then. I was sitting there eating my chips and minding my business, and I got hit in my jaw like with cuffs — ” Prior to these statements, the defendant explained that he had only been at the house for ten minutes when the police came in, grabbed him, and hit him in the jaw because they thought he was swallowing crack. He felt violated and was very upset over how he was treated.
 

 
 *1100
 
 From a plain reading of the record, it seems clear the defendant was comparing his most recent arrest procedure for the present charges with some past arrest procedure, wherein he was not treated so poorly. Accordingly, the prosecutor’s contention that she questioned the defendant about a prior arrest to impeach his statement that he had not been through police procedure before is ultimately unpersuasive.
 

 When the defendant objected at trial to the prosecutor’s reference to an arrest or charge involving a gun, the trial court sustained the objection and admonished the jury to disregard “that question and answer.” An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. La. | tfiCode Crim. P. art. 770. The issue of a mistrial is moot, however, as the conviction is being reversed and it serves no purpose to consider this matter further.
 

 CONVICTIONS REVERSED, SENTENCES VACATED, AND REMANDED.
 

 [1]
 

 . At the time of the defendant's arrest, Sergeant Ohler was a detective.
 

 [2]
 

 . The language added was “that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes.”
 
 See Slate v. Millien,
 
 2002-1006, pp. 10-11 (La.App. 1st Cir.2/14/03), 845 So.2d 506, 514.
 

 [3]
 

 . Initially, the prosecutor asked, “When you got caught with the gun and the marijuana that you pled to the marijuana, you never had — [.]" Later the prosecutor asked, “So you said you've never been involved with police procedure. You were arrested with a gun, and drugs, and marijuana before this case when police were involved, correct?"