PER CURIAM.
 
 [1]
 

 |¶ The state charged defendant by bill of information with possession of cocaine with intent to distribute, in violation of La.R.S. 40:967(A)(1), and with the illegal carrying of weapons while in possession of marijuana, in violation of La.R.S. 14:95(E). After trial by jury in May, 2008, defendant was found guilty on the responsive verdicts of attempted possession of cocaine with intent to distribute' and attempted illegal carrying of weapons while in possession of marijuana. The trial court sentenced defendant to concurrent terms of five years imprisonment at hard labor, with two years suspended. On the conviction for attempted possession of cocaine with intent to distribute, the court ordered that defendant serve two years of the executory three-year term of imprisonment without parole, probation, or suspension of sentence. On the conviction for attempted illegal carrying of weapons while in possession of marijuana, the court ordered that defendant serve the entire three-year ex-ecutory term without parole, probation, or suspension of sentence.
 

 ¡ ^Defendant appealed and the First Circuit reversed his convictions and sentences after finding that the trial court erred in admitting other crimes evidence and that the error was not harmless.
 
 State v. Scott,
 
 08-2418 (La.App. 1st CirR/19/09), 20 So.3d 1089. Specifically, the court of appeal determined that evidence of three prior co
 
 *1082
 
 caine transactions ostensibly conducted by defendant in the month which preceded the police raid on the residence in which he was arrested did not form part of the res gestae of the charged crimes and otherwise “had no independent relevancy besides showing a criminal disposition.”
 
 Scott,
 
 08-2418 at 8, 20 So.3d at 1095. We granted the state’s application to review that decision, and for the following reasons, we reverse the court of appeal and reinstate defendant’s convictions and sentences.
 

 On the afternoon of April 25, 2007, a combined task force drawn from the Slidell Police Department, including a SWAT team, and the St. Tammany Parish Sheriffs Office, descended on the residence located at 864 Hailey Avenue in Slidell armed with a search warrant for the premises. As detailed in the warrant application and in the evidence presented jurors at trial, the police acted on the basis of three prior sales of rock cocaine they had conducted at the residence on March 13, April 24, and April 25, 2007, the last one occurring shortly before a magistrate authorized the search. Slidell Police Officer Fred Ohler observed the first transaction conducted on March 13, 2007, and St. Tammany Parish Sheriff Office’s Detective Daniel Chauvin conducted the second and third transactions using the same female confidential informant. During the March 13 and April 24 transactions, the officers sat parked in the driveway of the residence in unmarked ears and observed their informant exchange currency for a single rock of cocaine at the doorway which connected the carport of the home with the master bed room. RBoth officers positively identified defendant as the seller. On April 25, Detective Chauvin again parked in the driveway but on this occasion the informant went into the house and the officer could not see what transpired. However, the informant was wired for sound and Chauvin eavesdropped on a conversation in which the informant asked for a second delivery of cocaine and was told that she would receive a cellular phone call within 20 to 30 minutes to confirm that narcotics were available. When the informant returned to the officer’s unmarked police unit, she gave him a rock of cocaine and told him that it came from defendant.
 

 Shortly thereafter, the SWAT team burst through the front door of the residence and found defendant in the master bedroom next to the carport. The officers also found Darlene Charles and two small children in the living room. After securing defendant, the officers searched the master bedroom and found a rock of cocaine wrapped in a plastic baggie on the head board of the bed and some unpack-aged marijuana lying on the bed. Next to the bed, on a fold-up table, the officers observed a box of sandwich bags and two razor blades which appeared coated with a white residue. On the floor next to the bed, they found a wireless phone bill in defendant’s name at the Hailey Street address. In addition, the officers retrieved a small handgun sandwiched between the mattress and box springs of the bed. In a spare room, the officers found on the top shelf of a closet a box filled with currency and several grams of crack cocaine wrapped in plastic. In a pair of sneakers on the floor of the closet, the officers discovered a second semi automatic handgun, fully loaded and with a round chambered. Sergeant Ohler testified that when confronted with this evidence, defendant did not admit to possession of either the drugs of the handguns, but informed the officer that he would “take the ride on this.”
 

 14According to Officer Ohler, the single rock of cocaine found on the head board “was packaged [in] the way that on previous occasions that people have actually distributed crack cocaine to me.... They
 
 *1083
 
 just basically use the corner of [a normal plastic sandwich bag], tie off the top, and use that.” On the other hand, the officer conceded that a piece of cocaine rolled up in that manner could also have been for personal use. However, the police failed to find in the residence a crack pipe or any other narcotics paraphernalia associated with the smoking of crack cocaine and the officer apprised jurors that the box of sandwich bags on the fold-out table and the razor blades coated with a residue were also consistent with the packaging of cocaine for distribution. As for the cocaine in a shoe box in the spare room, Sergeant Ohler thought the amount “was definitely in my opinion more than [for] personal use.” Although the warrant did not name the owner or occupant of the premises, in his opinion, the wireless phone bill found on the floor of the master bed room “places [defendant] as living there.”
 

 That conclusion, among other opinions offered by the officer, was hotly disputed by Peggy Rudolph, defendant’s sometime girlfriend. According to Ms. Rudolph, she lived at the Hailey Street residence with her four children, including her 20-year-old son, James Rudolph. Peggy Rudolph testified that defendant lived elsewhere in Slidell but would visit her on Hailey Street. Defendant had obtained a cellular telephone for her to use but she paid the bill which, she conceded, came to the Hai-ley Street residence addressed in his name. On April 25, 2007, Rudolph left two of her children in the care of her sister’s friend, Darlene Charles, who had been living there for several days, and went to visit her father confined in the Covington city jail. Worried about her babysitting arrangement with Charles, Rudolph called defendant and asked him to check on her children. Rudolph |Ktestified that she knew nothing about the alleged drug trafficking from her home and told jurors that the gun found in the sneakers on the floor of the spare room closet belonged to Jermaine Cannard, who had been living in the house on March 13, 2007, along with her 20-year-old son who used the spare room.
 

 Defendant also testified and told jurors that he had arrived on Hailey Street barely 10 minutes ahead of the police and that he had had time only to turn on the television and serve himself some chips and dip before the SWAT team burst through the front door. According to defendant, one SWAT member struck him in the jaw when the officers mistook the dip in his mouth for cocaine they thought he might be trying to conceal or destroy. He flatly denied conducting any cocaine sales on March 13, April 24 or April 25, 2007. Defendant also denied possession of the firearms and making any statement to the officers that he would “take the ride.” Defendant confirmed Rudolph’s account for how she acquired a cell phone and why the bill for it came to Hailey Street with his name on it although he lived elsewhere in Slidell. “The 25th I was called there,” he explained to jurors, “and I was there, and I hate I ever came that direction, because wouldn’t none of' this be going on right now if I wouldn’t have pulled in that driveway, and I wouldn’t be the one sitting here right now.”
 

 Amplifying on that statement, defense counsel argued to jurors at the close of the case that defendant was “what you call on the street, a duck. A person who was set up. Not necessarily by the police but he was set up.” The confidential informant’s wire had picked up several voices during the April 25 transaction inside 864 Hailey and counsel suggested to jurors that two of the voices belonged to Rudolph and her 20-year-old son. “[B]ut all of a sudden,” counsel argued, “Peggy goes to the jail .... [her son] leaves, and she makes a call to her baby’s | fidaddy. We’ve left the kids
 
 *1084
 
 all alone. Come on over to the house. He gets to the house, ten minutes after he’s there, the door comes crashing in.” Counsel did not dispute that prior drug sales occurred at the residence but challenged jurors to consider on the basis of the recordings made from the informant’s wire as she took delivery of the cocaine whether defendant, or Peggy Rudolph’s adult son, had conducted the transactions.
 

 The state first mentioned the prior sales at the Hailey Street residence during its opening remarks outlining what jurors would hear in the course of the trial. At the close of the prosecutor’s remarks, defense counsel moved for a mistrial on grounds that defendant was “not on trial for any distributions” and that the defense had not received prior notice of the state’s intent to introduce the evidence. In arguing the motion, the state observed that the prior sales were part of the case, “one of the probable causes to go in the house,” and that the crimes were “also part of the intent-part of the res gestae.” The trial court denied the motion without giving any reasons but in its general charge at the close of the case, the court instructed jurors that “[t]he sole purpose which such evidence may be considered is whether it tends to show, that the accused possessed the requisite specific intent to commit a crime on a later occasion, or to show such thing[s] as motive, opportunity, preparation, plan, or absence of mistake or accident.”
 

 On appeal, the First Circuit concluded on the basis of its review of the record that the state had in fact given the defense pretrial notice in discovery of its intent to use other crimes evidence. However, particularly with regard to the first sale which “occurred almost one and a half months prior to the execution of the search warrant,” the court of appeal determined that the state had failed to establish for purposes of Louisiana’s broad res gestae doctrine that “the ‘other 17crimes’ were necessary incidents or immediate concomitants of the charged offenses, or that it formed, in conjunction with the charged offenses, one continuous transaction.”
 
 Scott,
 
 08-2418 at 8, 20 So.3d at 1095. The state thereby had failed to show that the other crimes “were related and intertwined with the charged offenses to such an extent that the State could not have accurately presented its case without reference to them.”
 
 Id.
 
 (citing
 
 State v. Addison,
 
 551 So.2d 687, 691-92 (La.App. 1st Cir.1989),
 
 writ denied,
 
 573 So.2d 1116 (La.1991)). The court of appeal further found that given the defense of the case, which “it would seem, amounted to nothing more than a blanket denial of [defendant] being in possession of drugs or the gun,” and “[i]n the absence of a defense that the act was done without knowledge of the illegality of the substance, or that, while he may have possessed the drugs, there was no intent to distribute them,” intent and guilty knowledge “were not genuine matters at issue herein.”
 
 Id.
 
 (citing
 
 State v. Frederick,
 
 340 So.2d 1353, 1355 (La.1976)). As there was no other independently relevant basis for admitting the evidence,
 
 e.g.,
 
 identity, the First Circuit concluded that the trial court erred in admitting evidence of the three prior cocaine sales and that the error was not harmless.
 
 Scott,
 
 08-2418 at 9-10, 20 So.3d at 1096 (“Since the defendant made no inculpatory statements upon his arrest, and since several other people were living in the house during the time period of the drug sales, including two other men besides the defendant, it cannot be ruled out that the jury decided the defendant was a bad man who had committed other drug offenses in the past. Both of the jury’s responsive verdicts of the attempted charged offenses seem to suggest the lack of a strong evidentiary case presented by the State.”) (citation omitted).
 

 
 *1085
 
 |8We need not address here the court of appeal’s finding that all three of the prior drug transactions, even the one occurring on April 25, 2007 shortly before execution of the search warrant at the Hailey Street address, did not form integral components of the charged offenses such that “ ‘the purpose served by admission of other crimes evidence [was] not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.’ ”
 
 State v. Colomb,
 
 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting
 
 State v. Haarala,
 
 398 So.2d 1093, 1098 (La.1981)). Even assuming,
 
 arguendo,
 
 that the three prior sales at the Hailey street address did not form part of the res gestae, they were plainly relevant to the question of whether defendant, assuming further that he had actual or constructive possession of the contraband in the residence, intended to distribute the cocaine, an essential element of the offense charged.
 
 State v. Elzie,
 
 343 So.2d 712, 714 (La.1977) (“[T]o convict the accused the state was required to prove beyond a reasonable doubt not only that he possessed the cocaine found on his premises, but also that he did so with the specific subjective intention of possessing it in order to distribute it.”);
 
 see, e.g., State v. Knighten,
 
 07-1061, pp. 1-2 (La.11/16/07), 968 So.2d 720, 721 (evidence of prior sales to informant admissible to prove an essential element of the crime charged, possession of marijuana with intent to distribute);
 
 State v. Grey,
 
 408 So.2d 1239, 1241-42 (La.1982) (same). The prior sales at the Hailey Street address provided jurors with an evidentiary basis for assessing Sergeant Ohler’s opinion that even the single rock of cocaine found wrapped in plastic on the headboard of the bed in the master bedroom where the police arrested defendant was intended for sale, as was the cocaine found in the spare room closet, as evidenced also by the box of plastic baggies and razor blades ^observed on the fold-out table next to the bed, and by the absence of any paraphernalia associated with the smoking of crack cocaine in the home.
 
 See State v. Hearold,
 
 603 So.2d 731, 735 (La.1992)(factors in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance include: (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute) (citing
 
 State v. House,
 
 325 So.2d 222 (La.1975)).
 

 To this extent, the court of appeal erred in relying on our decision in
 
 Frederick,
 
 which involved
 
 distribution
 
 of marijuana, an offense in which “[t]he requisite general criminal intent is established by mere proof of the voluntary distribution.”
 
 Frederick,
 
 340 So.2d at 1355. In the present case, and unlike the circumstances in
 
 Frederick,
 
 the question of whether defendant held the cocaine for sale was a “real and genuine matter[] at issue, independent of the defendant’s general claim of innocence posed by his plea of not guilty.”
 
 Id.
 
 In addition, the court of appeal’s reliance on
 
 Addison
 
 for the proposition that the prior sales at the Hailey Street address did not form part of the res gestae, was also ultimately misplaced. The First Circuit went on to hold in
 
 Addison
 
 that the prior sale at issue, although not part of the res gestae of the charged crime of possession of pentazocine with intent to distrib
 
 *1086
 
 ute, was nevertheless relevant and admissible on the question of intent, and that the prosecutor therefore did not err by referring to |10it in her opening remarks to the jury although she ultimately decided not to introduce any such evidence.
 
 Addison,
 
 551 So.2d at 692 (citing
 
 Grey).
 

 Evidence of the prior sales was also relevant for another purpose. Defendant sought to dissociate himself from the Hai-ley Street address to the greatest extent possible, portraying himself as a sometime visitor and thus someone who would not likely have had either actual or constructive possession of the cocaine or the firearms found in the residence. Evidence that the surveillance team had personally observed defendant at the residence on March 18 and then again a month later on April 24 underscored the opinion of Sergeant Ohler that the cellular phone bill addressed to defendant at the Hailey Street address and found on the floor of the master bedroom next to defendant on the bed where the officers found him meant that he lived there, increasing the odds that he possessed the cocaine and firearms, and thus directly contradicted the testimony offered by defendant and Peggy Rudolph and their innocent explanation for why defendant’s name appeared on the bill.
 
 See State v. Constantine,
 
 364 So.2d 1011, 1014 (La.1978)(“Matters which are ... logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses.”);
 
 see also
 
 1
 
 McCormick on Evidence,
 
 p. 672 (5th ed., 1999, John W. Strong, ed.) (The task before the trial court in assessing the admissibility of other crimes evidence “is not merely one of pigeonholing but of classifying and then balancing.”).
 

 Finally, although it reversed defendant’s convictions and sentences on what it perceived as error in admitting evidence of the prior drug sales, the court of appeal considered defendant’s remaining assignments of error, including one in which he complained about the state’s cross-examination of him with respect to his lnprior record. In his direct testimony, defendant acknowledged that he had been previously convicted of possession of marijuana. On cross-examination, the prosecutor used assertive questions to place before jurors evidence that the arrest leading to his conviction for marijuana had also involved a gun. Defense counsel immediately objected to the firearm reference as irrelevant and prejudicial, prompting the trial court to admonish the jury to disregard the remark. At the close of the evidence, defense counsel then moved for a mistrial “based on the questions asked by the prosecutor relating to the prior arrest for which he had not been convicted, the gun charge, that she put before the jury.” The trial court denied the motion on grounds that it had agreed with the objection and admonished the jury to disregard the reference and “that’s sufficient.” The court of appeal agreed with defendant that “whether it was a drug arrest while the defendant was carrying a gun or a gun charge subsequently dropped, the reference to an ostensible gun charge or arrest was improper.”
 
 Scott,
 
 08-2418 at 14, 20 So.3d at 1099;
 
 cf.
 
 La.C.E. art. 609.1(B) (“Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.”). The First Circuit further determined that defendant had not invited that line of cross-examination and that the admonition by the trial court to the jury was not, in fact, sufficient to prevent a mistrial.
 
 Scott,
 
 08-2418 at 15, 20 So.3d at 1099 (citing La.C.Cr.P. art. 772(2)). Nevertheless, because the court
 
 *1087
 
 of appeal was reversing defendant’s convictions and sentences on other grounds, the First Circuit found that “it serves no purpose to consider this matter further.”
 
 Id.,
 
 08-2418 at 16, 20 So.3d at 1100.
 

 | ^Reasonable jurors might well have drawn a parallel between the crime charged in the present case, the illegal carrying of a firearm while in possession of a controlled substances, to the apparent circumstances of the prior arrest involving marijuana and a gun, and thereby concluded that the reference to the firearm was to another prior crime for which defendant had not been convicted. However, we find it unnecessary to remand this case to the court of appeal to consider whether, in light of our disposition of the issue regarding evidence of the prior sales at the Hai-ley Street address, the prosecutor’s cross-examination of defendant affords an independent basis for reversing his convictions and sentences. Even assuming that the prosecutor placed inadmissible other crimes evidence before jurors regarding the prior firearm possession, and that the court’s admonition was not thus sufficient to cure the error, violations of La.C.Cr.P. art. 770(2) remain subject to harmless-error analysis.
 
 State v. Johnson,
 
 94-1379, pp. 15-16 (La.11/27/95), 664 So.2d 94, 101 (as with any other trial error, violations of art. 770(2)are subject to harmless error analysis under the reasonable doubt standard of
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In the present case, despite evidence that would have sustained convictions for the charged crimes, the jury returned lesser verdicts of attempt on each count. As noted by the court of appeal, the lesser verdicts appear to reflect reservations about the strength of the state’s case that defendant had constructive possession of cocaine and the firearms.
 
 [2]
 
 The court of appeal considered that the jury’s apparent perception of evidentiary weaknesses in the state’s case meant that the references to defendant’sjjgprior crimes could not be harmless. However, we think it clear that, at least with respect to the reference to the prior firearm possession, return of the lesser verdicts indicates the jury had not been lured by improper evidence of defendant’s character “into declaring guilt on a ground different from proof specific to the offense charged.”
 
 Old Chief v. United States,
 
 519 U.S. 172, 180, 117 S.Ct. 644, 650,136 L.Ed.2d 574 (1997). We therefore find that any error in denying the motion for a mistrial was harmless.
 

 Accordingly, the decision of the court of appeal is reversed, defendant’s convictions and sentences are reinstated, and this case is remanded to the district court for execution of sentence.
 

 DECISION OF COURT OF APPEAL REVERSED; DEFENDANT’S CONVICTIONS AND SENTENCES REINSTATED; CASE REMANDED.
 

 [1]
 

 . Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
 

 [2]
 

 . The matter of constructive possession of the firearms was of particular concern to jurors, as they interrupted their deliberations with a question to the court whether defendant had "to be aware of the presence of a firearm to be in control of a firearm.” The question led the court to give jurors an additional instruction on constructive possession,
 
 i.e.,
 
 that a person "may be in constructive possession of a gun even though it is not in his physical custody if it is subject to his dominion and control.”