377 So.2d 259 (1979)
STATE of Louisiana
v.
Jessie Reed MARTIN.
No. 63303.
Supreme Court of Louisiana.
May 21, 1979.
On Rehearing November 1, 1979.
Lewis O. Unglesby, Baton Rouge, for defendant-appellant on appeal only.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for the State.
SUMMERS, Chief Justice.
Defendant Jessie Reed Martin and Wanda Womack were charged by bill of information with forgery on October 23, 1976 of a check on the account of Mr. or Mrs. Tom H. Cavin, a violation of Article 72 of the *260 Criminal Code. Womack pled guilty after trial before a jury of six; Martin was found guilty and was subsequently convicted as a second felony offender and sentenced to imprisonment for five years. La.Rev.Stat. 15:529.1.
Defendant raised six assignments of error to the conduct of the trial. All are argued on this appeal.
Evidence at the trial showed that Martin stole a purse belonging to Mrs. Tom Cavin from her unoccupied car. Later Martin and Womack forged one of Mrs. Cavin's checks at the Woolco Department Store in Baton Rouge to buy a stereo. By having the Woolco clerk who made the sale examine photographs, police were able to identify Martin and Womack as the perpetrators of the crime.
Assignments 1 and 2: Evidence of the burglary of the purse from an automobile the day before the forgery was admitted by the trial judge as part of the res gestae; and evidence of that burglary did not require a "Prieur" notice according to the trial judge's ruling. The defense assigns these rulings as error.
Obtaining the purse from the automobile was properly considered relevant to this prosecution as part of the inception of a continuing scheme to defraud Mrs. Cavin by forging her check. In considering the doctrine of res gestae set forth in Sections 447 and 448 of Title 15 of the Revised Statutes, this Court said in State v. Curry, 263 La. 997, 1006-1007, 270 So.2d 484, 487 (1972):
"Consequently, acts and declarations have been brought within the doctrine if they are connected with, and grow out of, the act or transaction in such a way as to form one continuous transaction, provided they, in some way illustrate, elucidate, qualify or characterize the act, and in a legal sense are a part of it. As a result, incidents offered as res gestae may be separated from the act by a lapse of time more or less appreciable, provided they grow out of and are in a legal sense immediately connected with the litigated act."
Because the burglary of the purse and checkbook from the automobile was part of a continuing scheme to forge Mrs. Cavin's check, the two incidents were not separate and distinct events. No "Prieur" notice was therefore necessary to advise Martin that evidence would be introduced relating to the burglary. Cf. State v. Mitchell, 344 So.2d 1026 (La.1977).
If prejudice is to be considered, and it should be, defendant cannot realistically claim that he was unaware and surprised by the introduction of evidence of the burglary of the purse. Indeed, it is clear from the transcript that he was well aware of the burglary, because his objection indicates that he anticipated the evidence to that effect before the questioning or any answer on the subject.
These assignments lack merit.
Assignment 3: Defendant argues that evidence of physical threats made by defendant to Wanda Womack were irrelevant, and the trial court should not have admitted evidence to that effect.
Womack, rather than defendant, actually forged the check. Threats by defendant were therefore relevant to establish his participation and involvement in the crime, and the testimony that Womack wrote the check at defendant's command tended to show that he was concerned in the commission of the crime and as such was a principal. La.Rev.Stat. 14:24.
Assignment 4: While being questioned by the prosecutor Wanda Womack testified as follows:
"Q. You said you didn't have a job. Is that right?
A. Yes.
Q. And you said that you were taking drugs all this time, all these drugs that Mr. Calmes was talking about? You have to answer.
A. Yes.
Q. How could you afford all those drugs without any money? I mean, were you buying them or what?
A. No.
Q. Where were you getting them?
*261 A. Jessie was buying them."
Defense counsel objected, arguing that this testimony was evidence of other crimes, inadmissible under the facts of this case. He did not, however, ask for a mistrial but consented to an admonition by the judge to the jury. No further testimony of this character was elicited from the witness. The trial judge found the testimony to be relevant to the relationship between the parties and probative of defendant's dominance over the witness at the time of the offense.
There is no merit to this assignment.
Assignment 5: While Lt. Roland C. Knight, a sheriff's deputy, was testifying about the execution of a search warrant and defendant's arrest, this colloquy occurred:
"Q. Okay. Now would you tell the jury please how you happened to go about making this arrest? Where did it take place and who was present?
A. Cpl. J. Thompson and I executed a search warrant in Livingston Parish at a trailer park, I forget the trailer number, to seize several items that came out of different burglaries in the Baton Rouge area.
Q. Who was ...
Mr. Calmer [defense counsel]: I object again, your Honor."
After the jury was excused defense counsel objected and moved for a mistrial, contending the quoted testimony was evidence of another crime. The testimony does not implicate the defendant except, perhaps, by a vague inference. Moreover, a police officer is not an official within the meaning of Article 770 of the Code of Criminal Procedure which requires a mistrial when the judge, district attorney, or a court official refers to other crimes committed by defendant. State v. Boyd, 359 So.2d 931 (La.1978). Nothing about this interrogation supports an argument that the witness' remark was intentionally solicited by the prosecutor to show other crimes committed by the defendant.
This assignment is therefore without merit.
Assignment 6: On redirect examination, the prosecutor asked Wanda Womack how she came to live with the defendant. She testified that while she was staying with people in Denham Springs after her husband was arrested, the defendant told her that if she got the minutes he could look at them and tell her if she could file a writ to get her husband out. The prosecutor then asked: "Is Jessie a lawyer?"; to which the witness replied, "No, but usually people that's been in the penitentiary four times know what to look for on those papers. And I didn't have the money to go to a lawyer."
At the time of the remark, no objection was lodged by the defense. The next day, when the trial resumed, defense counsel objected, saying he did not hear the remark when originally uttered. The trial judge denied the motion, being of the opinion that the answer was not responsive to the question, and there was no intention to elicit that response by the prosecutor. As noted in other portions of this opinion, this witness was not an official whose remarks of that nature would require a mistrial. La. Code Crim.Pro. art. 770. The ruling, then, was not erroneous.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON and DENNIS, JJ., concur.

ON REHEARING
DENNIS, Justice.
We granted a rehearing to examine again the trial judge's rulings allowing the prosecution to introduce evidence of other crimes and wrongful acts by the defendant. The issue presented is whether evidence that an accused threatened and furnished narcotics to his concubine is admissible to prove his complicity in a forgery committed by her. Upon further review and consideration, we reverse. Under the particular facts of this case, whether the concubine committed the forgery voluntarily was not a material issue, *262 and the evidence of defendant's other crimes and wrongful acts were not properly relevant to prove any matter genuinely at issue.
FACTS
Martin is charged with forgery by the false making of Mrs. Tom H. Cavin's signature to a check which he knowingly issued to Woolco Department Store with intent to defraud on October 23, 1976. Wanda Womack, Martin's concubine, testified to the following: On October 22, 1976 Martin stole a purse containing Mrs. Cavin's checkbook and driver's license. Womack had expressed a desire for a stereo set, and Martin informed her that they were going to acquire one by having Womack pose as Mrs. Cavin and forge her signature to one of the checks. The next day the two carried out his plan by fraudulently obtaining a $476.95 stereo from a Woolco store. Martin went into the store with her, assisted in selecting the stereo, and watched as she signed the check and presented Mrs. Cavin's driver's license as identification. Using Martin's automobile they took the stereo to Martin's trailer where they were living. At the time of this incident Womack was unemployed and totally dependent on Martin. He knew she had no checking account or any means by which she could have purchased the stereo.
The remainder of the state's evidence as to this transaction was: The testimony of Woolco employee Marc Griffin, who identified Martin as the man accompanying Wanda Womack when she obtained the stereo by forgery; the testimony of the police officers who recovered the stereo and Mrs. Cavin's driver's license from Martin's trailer; and the testimony of Mrs. Cavin that she did not sign the check or give anyone else the authority to do so.
During the state's case in chief, the prosecuting attorney, over defense objection and without pre-trial Prieur notice or hearing, sought to prove that Martin had forced Womack to commit the forgery by eliciting from the prosecution witness, Womack, evidence of other crimes and wrongful acts committed by Martin, as follows:
(1) Martin's threats at unspecified times before the forgery to blow her head off; to shoot her in all of her joints so that she could never use her arms or legs again; and to hang her up by her heels, cut off her nose, and leave her to bleed to death. These threats were not directly related to the forgery, but were apparently designed by Martin to prevent Womack from attempting to leave him. The prosecution convinced the trial judge to admit the evidence, however, on the theory that it demonstrated the coercion intrinsic to the couple's relationship.
(2) Martin's continual unlawful procurement of narcotic drugs and distribution of them to Womack throughout the period of their living together.
The defendant's essential defense, by cross examination and argument of counsel, was to question the credibility and powers of observation of the state's witnesses, and, by these means, to contend that Martin was not a principal to the forgery committed by Womack. The defendant did not take the stand or call any witnesses.
LEGAL ISSUES AND PRINCIPLES
The state must prove beyond a reasonable doubt the accused's guilt of the specific crime charged. La.Const. art. 1 § 16. Proof of Martin's guilt of forgery depends on proof of the basic crime, i. e., a false making, with intent to defraud, of a signature to a writing purporting to have legal efficacy, or knowingly issuing or transferring, with intent to defraud, a forged writing, La.R.S. 14:72; and proof that Martin was a principal, i. e., that he was concerned in the commission of the forgery by aiding and abetting in its commission, or by directly or indirectly counselling or procuring another to commit the crime. La.R.S. 14:24. Accordingly, the issue presented is whether evidence of Martin's threats upon Womack's life and his unlawful distribution of drugs to her was admissible to prove that he aided or abetted in the forgery or counselled or procured Womack to commit it.
The state argues that the evidence was properly admissible to prove that Martin *263 was involved in the commission of the offense. To show Martin's involvement in the offense, since he did not actually write the check, the state was required to show that he had the knowledge and intent necessary to be a principal to the forgery. The legal principles governing the introduction of evidence for these purposes is governed by statutes which have been interpreted and discussed at length by this Court on a number of occasions. For example, as we stated in State v. Frederick, 340 So.2d 1353, 1355 (La.1976):
Proof of present guilt may not properly be made by evidence of general bad character or of prior criminal record or of other criminal activity independent of the present offense. State v. Prieur, 277 So.2d 126 (La.1973).
Therefore, evidence of other crimes is inadmissible except under limited special exceptions, such as when they form part of the res gestae, are convictions admissible solely for impeachment purposes, or (pertinent to the present issue) are acts relevant to prove intent, knowledge, or system with regard to the specific offense charge under La.R.S. 15:445, 446. Even then, evidence of other crimes may be introduced for the limited permissible purposes only with procedural safeguards set forth by Prieur, and then only if the probative value of such testimony outweighs its prejudicial effect.
See: State v. Moore, 278 So.2d 781 (La.1973); State v. Prieur, 277 So.2d 126 (La.1973). See also: State v. Slayton, 338 So.2d 694 (La.1976) (docket no. 58,054, November 8, 1976); State v. Gaines, 340 So.2d 1294 (La.1976); State v. Clark, 338 So.2d 690 (La.1976); State v. Waddles, 336 So.2d 810 (La.1976).
As these decisions indicate, because of the grave risk of substantial impairment of the constitutional presumption of innocence, evidence of other crimes to prove knowledge, intent, or system under La. R.S. 15:445, 446 is admissible only under these specific exceptions, strictly construed so as to require a "showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered." State v. Prieur, cited above, at 277 So.2d 130."

APPLICATION OF LEGAL PRINCIPLES TO THIS CASE
Under these principles, the evidence of the other crimes and wrongful acts offered to show the requisite intent or guilty knowledge of the defendant, thereby proving his involvement in the crime, is not properly admissible.
The uncontroverted testimony of the state's witnesses is to the effect that Martin stole the check and driver's license used in the forgery, instructed Womack as how to perpetrate the crime, accompanied her to the store, approved her selection of the stereo, drove her and the stereo to his trailer, and retained possession of the fruits of the crime. The requisite knowledge and intent to make Martin a principal to the forgery were fully established by this uncontradicted evidence.
Thus, in the absence of a defense that Womack committed the forgery without Martin's knowledge and assistance, "intent" or "knowledge" were not genuine matters at issue. Defendant's plea of not guilty, without more, did not make evidence of extraneous offenses admissible to prove "intent" or "guilty knowledge". State v. Frederick, supra; State v. Clark, supra; State v. Moore, supra. The evidence must indicate that these are real and genuine matters at issue, independent of the defendant's general claim of innocence posed by his plea of not guilty, to permit the exceptionally allowed evidence of extraneous offenses and wrongful acts. The mere theory that a plea of not guilty puts everything material at issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defenses in order to rebut them at the outset with some damning piece of evidence. State v. Frederick, supra; State v. Moore, supra.
*264 Wanda Womack was not on trial in this case, having pleaded guilty to the forgery before Martin's trial began. Whether she committed the forgery voluntarily, therefore, was not a real or genuine matter at issue.
The effect of the state's evidence of other crimes and acts of bad character was not to prove any matter genuinely at issue in the case. It was instead to prove the defendant's propensity for criminal and anti-social activity. The evidence is inadmissible for such purposes. As we stated in State v. Gaines, supra 340 So.2d at 1296:
"These statutes [La.R.S. 15:445, 446] and the jurisprudence construing them rest on the proposition that if the sole relevance of other acts is to prove the defendant's criminal disposition, then the evidence is inadmissible character evidence. Although it can be effectively argued that evidence of other offenses is inadmissible because it is irrelevant to any issue in the trial for the crime charged, it can also be argued that this character evidence is relevant to guilt generally, because, having committed this kind of crime before, the defendant is at least capable of the criminal activity charged. Under either analysis, however, the evidence has been uniformly excluded due to the fact that the evidence presents an inordinate risk of prejudice. The prejudice results from various factors, among which are: (1) the strong possibility that the jury will be unduly swayed in its determination of guilt merely because the defendant is a "bad man", (2) the possibility that the evidence may confuse the jury in collateral issues and detract their attention from the main issue of the defendant's guilt for the crime charged, and (3) the danger of unfair surprise.
Therefore, accepting the argument that this evidence is highly relevant, the evidence is nonetheless excluded, not because it fails to tend to prove the defendant's guilt, but because it does it too well and thereby deprives the `bad man' of the fair trial and benefit of the presumption of innocence and the state's burden of proof."
CONCLUSION
We therefore find reversible error presented by defendant's assignment no. three, because the evidence of other crimes and wrongful acts was not probative of any matter genuinely at issue in the case but merely demonstrated the defendant's propensity for criminal and anti-social activity. Accordingly, the defendant's conviction and sentence are reversed and the case is remanded for a new trial in accordance with law.
REVERSED AND REMANDED.
SUMMERS, C. J., and BLANCHE, J., dissent.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
Womack committed the crime of forgery for which defendant was also charged. The theory of the state's case was that defendant had forced her to commit the crime; therefore, he was also criminally responsible. The complained of evidence did not involve evidence of other crimes committed by defendant on other victims to show his bad character. Rather, the evidence was introduced to show the influence defendant had over Womack to force her to commit the crime for which he was being prosecuted. I consider this evidence relevant and properly admitted. Accordingly, I respectfully dissent.