STATE OF LOUISIANA                    NO. 20-KA-221

VERSUS                               FIFTH CIRCUIT

TEREZ ARD                            COURT OF APPEAL

                                     STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-494, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING


April 28, 2021


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Hans J. Liljeberg


<u>**CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED**</u>
<u>**FOR RESENTENCING; REMANDED WITH INSTRUCTIONS.**</u>
    **SMC**
    **JGG**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Andrea F. Long
Kellie M. Rish
Christina Fisher

COUNSEL FOR DEFENDANT/APPELLANT,
TEREZ ARD
Bertha M. Hillman

**CHEHARDY, C.J.**

Defendant, Terez Ard, appeals his conviction and sentence for domestic abuse battery by strangulation. On appeal, defendant contends that the district court erred in allowing the admission of other crimes evidence at trial. For the reasons that follow, we find no merit to defendant's argument, and accordingly, affirm his conviction; his sentence is vacated and remanded for resentencing in accordance with La. R.S. 14:35.3(C); and, this case is remanded with instructions.

*PROCEDURAL HISTORY*

On March 21, 2019, the Jefferson Parish District Attorney filed a bill of information charging defendant, Terez Ard, with domestic abuse battery by strangulation in violation of La. R.S. 14:35.3(L). At his arraignment, defendant pled not guilty to the charged offense.

Prior to trial, the State filed a notice of intent to introduce evidence of other acts engaged in by defendant pursuant to La. C.E. arts. 404(B) and 412.4. In its notice, the State explained that defendant was charged with a previous domestic incident involving the same victim. The State indicated its intention to introduce evidence that on August 15, 2017, defendant committed a prior act of domestic abuse against this same victim, wherein defendant broke the victim's front door and an interior door after an argument, and that the charges were refused by the district attorney's office. The State's notice specified that it sought the introduction of such evidence pursuant to La. C.E. art. 412.4 and for the purpose of establishing intent, motive, plan, preparation, knowledge, opportunity and lack of mistake or accident pursuant to La. C.E. art. 404(B)(1). The State's notice further explained that "[t]aken as a whole, these acts illustrate the volatile nature of their relationship and an escalation of physical violence at the hands of the defendant."

A *Prieur* hearing was held on September 16, 2019, at which time the State introduced exhibits and both parties presented argument. The State argued that the August 15, 2017 prior incident stemmed from the "very same" argument involved in the subject incident—the parties' relationship. The police reports from both incidents were admitted into evidence. Additionally, an affidavit from the victim was admitted in which she attested that she "mitigated" the prior incident in order to help defendant. The State argued that it anticipated that in the instant case, the defense would claim that defendant acted in self-defense and that the victim was the primary aggressor in the incident, but that the evidence concerning the prior incident showed that the victim has had to fend off the defendant's aggressive behavior before when discussing their dating relationship, and that the evidence established a "pattern of behavior" by defendant. In response, defense counsel argued that admission of the evidence regarding the prior 2017 incident would confuse and distract the jury, and that the prejudicial nature of the evidence outweighed its probative value. The trial court overruled defendant's objection to the introduction of evidence of the prior act.

On February 12, 2020, after a two-day trial, the jury unanimously found defendant guilty as charged. Defendant filed a motion for new trial on March 4, 2020, asserting that he did not receive a fair trial because the State was permitted to elicit the testimony of minor children, and because the trial court denied him the opportunity to submit evidence of two prior incidents between himself and the victim, which would have shown the victim, not defendant, as the aggressor and would have supported his claim of self-defense. The district court denied defendant's motion for new trial on March 5, 2020.

Also on March 5, 2020, after defense counsel waived sentencing delays, the trial court sentenced defendant to three years imprisonment with the Department of Corrections. Thereafter, the State filed a multiple offender bill of information

alleging defendant to be a third-felony offender, to which defendant stipulated. The trial court vacated defendant's original sentence and resentenced him to four years imprisonment with the Department of Corrections without benefit of probation or suspension of sentence. Defendant timely filed a motion for appeal of the verdict and sentence, which the trial court granted. On appeal, defendant challenges the admissibility of the evidence of the prior act occurring on August 15, 2017, on grounds that the evidence was more prejudicial than probative.

*FACTS*

Defendant and the victim, Fabriana Hamilton (hereinafter "the victim"), met their junior year of high school and had an on-again off-again sexual relationship for approximately fourteen years.[1] During the summer of 2017, defendant moved into her home located in Avondale, Louisiana. When defendant was not residing with the victim, he lived with his grandmother, who resided nearby in Avondale.

In January 2019, defendant and the victim were still seeing each other, but no longer living together. While the relationship was "good at first," defendant would take a "break" in the relationship for a few days at a time in order to be with other women. On January 23, 2019, defendant and the victim were communicating by text during the early part of the day regarding defendant's desire to take another break in the relationship, and the victim indicating that she was done with the breaks.

At approximately 9:00 that evening, accompanied by her children and a friend, Tatiana Bahem, the victim drove her vehicle into a gas station. Defendant drove into the gas station at the same time and asked the victim to fill up his vehicle with gas, but she refused. The victim asked defendant whether he planned to come by her house that evening, to which he replied that he did not. They

---

[1] During that time period, defendant joined the Air Force and was away from the area for four-and-a-half years; they "rekindled" the relationship when he returned.

exchanged a few more words and then defendant drove off. After leaving the gas station, the victim and defendant began texting, wherein defendant reiterated his desire to take a break as the relationship was no longer working for him. The victim replied that she was done with breaks stating, "[N]o breaks say f*** it and be done[.] It'll hurt but dems the breaks. So wyw ["what do you want"] to do? Let me know cuz a break means [it's] over." When defendant did not respond to her messages sent at 9:32 and 9:33 p.m., the victim and Ms. Bahem proceeded to defendant's grandmother's house, where the victim knew defendant would be, because she wanted an answer from defendant as to whether or not the relationship was over "so it could be done." Based on her prior history with defendant, and knowing that he tended to "get irate" whenever he was intoxicated, the victim took her son's aluminum bat with her for protection.

When the victim and Ms. Bahem arrived at the house, defendant was in his car with his brother and a friend. The victim approached defendant's car and asked him what it was going to be, and he replied that "it was a break up." According to the victim, she did not brandish the bat or otherwise threaten defendant with it. She told him not to contact her or her children again and not to come to her house again. When the victim left to return to her home, the insulting text messages from defendant continued until she eventually blocked him.

Defendant, however, claimed that when the victim arrived at his grandmother's house, she was demanding an answer about their relationship and appeared to be aggressive with the bat, tapping it against his car window. He contended that he did not exit his vehicle because he did not want her to hit him with the bat. Also, according to defendant, approximately fifteen minutes after the victim left his grandmother's house, she called him and invited him to come to her house so that they could talk, which he agreed to do.

About fifteen minutes after arriving back at her home, the victim was alerted by Ms. Bahem, who had gone outside to retrieve a phone charger, that defendant was outside the house. When the victim went outside, she claimed she told defendant to go home, but that defendant, who was standing next to his car, began throwing trash onto her yard and yelling profanities. According to the victim, before defendant left, he threw a beer bottle that hit her car. The victim testified that she picked the bottle up and threw it back at him, hitting the back panel of his car as he started to drive off. Defendant returned, retrieved the bottle, and threw it back at the victim. She stated that she caught the bottle and hurled it at defendant and missed as defendant sped away.

Thinking defendant had left, the victim testified that she walked back to her house, only to realize that defendant had returned. She then grabbed her child's aluminum bat as defendant exited his vehicle, "fussing and cussing," and aggressively approached her. After telling defendant to leave with no success, the victim stated that she pushed, but did not hit, him with the bat. The victim testified that she was afraid defendant would go into her house where her children were watching from inside. Defendant then grabbed the bat from the victim and hit her on her arm and thigh. She threatened to call the police. Defendant then rushed toward her, and wrestled her to the ground. The victim bit defendant in an effort to get him off of her and he bit her back. At one point during the melee, defendant rolled over on top of her and began choking her, putting both of his hands around her neck and digging his thumbs into her throat. The victim stated that she then dug her fingers into defendant's eyes.

According to Bahem, who was an eyewitness to the incident, defendant had both of his hands around the victim's throat until she lost consciousness. Bahem attempted to intervene and stop the brawl, to no avail. Bahem testified that she could smell alcohol on defendant's breath. Two of the victim's young sons, who

were watching the altercation from inside the house, also testified at trial that they saw defendant choke their mother with both hands until she passed out.

When the victim briefly regained consciousness, defendant asked her if she was okay, and though she attempted to speak, nothing came out. Defendant then sat on top of her again leaning in close so he could hear her. The victim told him she was okay, but that her brothers were going to get him. In response, defendant began choking her as before squeezing harder, causing her to begin losing consciousness again. At some point, one of the victim's children came out of the house and into the yard with a baseball bat and began hitting defendant trying to get him to stop choking his mother. Defendant grabbed the bat from the child and threw it. One of the victim's children called their grandmother, Kim Hamilton, who contacted the police. By this time, defendant had left the scene on foot to his grandmother's house because he could not locate his keys.

At trial, defendant described a completely different version of events to the jury. He stated that when he came to the victim's home at her request "to talk," she came out of the house brandishing a bat and yelling at him. He claimed that he rolled down his window and started throwing trash aiming it towards a nearby garbage can "to see if [he] could make it in." This is when the victim picked up a bottle that had landed in the yard instead of the garbage can and threw it at his vehicle as he attempted to drive away. Defendant stated that he got out of his vehicle to assess the damage from the bottle, and when he did so, the victim struck him in the shoulder with the baseball bat "out of the blue." He testified that when he attempted to block the next swing with his forearm, she hit him in the face. According to defendant, he grabbed the bat from the victim, threw it, and the victim put him in a headlock. He indicated that the victim then slipped and tackled him to the ground where they proceeded to wrestle. Defendant claimed that he "mounted" the victim in order to calm her down, but she proceeded to gouge him

in the eyes, spit in his face, and bit him in the face. Thereafter, when the victim attempted to roll him off of her, he bit her finger. Defendant stated that once he was able to get off of the victim, she told her son to swing the bat at him, causing them to re-engage in the physical altercation. Defendant testified that he attempted to leave, but that the victim would not give him his keys. He denied that he ever placed his hands on the victim's neck to choke or that she ever lost consciousness. Defendant then proceeded to walk to his grandmother's house nearby where he was met by a police officer.

Deputy Ryan Arceneaux from the Jefferson Parish Sheriff's Office ("JPSO") testified that he was dispatched to the victim's address based on a call received relating a domestic disturbance. He was the first officer to arrive on the scene, followed by Deputy William Burandt as backup. The victim's mother, Ms. Hamilton, arrived shortly thereafter. Deputy Arceneaux testified that he immediately observed that the victim was emotional and in distress, and had sustained several obvious injuries, including swelling, bleeding from her nose, and scratch marks on her neck. He also observed that the victim's voice sounded hoarse indicating to him, based on his training and experience, possible strangulation. Deputy Arceneaux took several photographs of the victim's injuries and contacted EMS to transfer her to the hospital for emergency medical assistance.

While questioning the victim, she told Deputy Arceneaux that there was a car parked in front of her house that did not belong to her. Both deputies observed trash on the lawn, and Deputy Burandt located a child-sized bat in the yard. Due to the victim's emotional state and difficulty in speaking, Deputy Arceneaux testified that he did not obtain a written statement from her; no audio or written statement of the victim was ever taken. While at the scene, the deputies learned that defendant was located at a nearby residence on Rosalie Court (his grandmother's house).

The deputies relocated to that location and, finding defendant present there, read him his rights and questioned him. Despite noticeable injuries to his face and shoulder, defendant denied that he had been involved in a physical altercation with the victim. After pointing out the inconsistencies, and noting that both he and the victim had obvious injuries, defendant was placed under arrest and transported to the hospital for medical treatment.

Deputy Arceneaux proceeded to the hospital to check on the victim. While there, he encountered defendant, who inquired about the charges he was facing. Upon learning that he faced a "felony domestic charge," defendant took on what Deputy Arceneaux described as a "defeated posture," and asked the deputy if he wanted to hear the truth about what actually happened. Defendant proceeded to provide a statement wherein he stated that the victim had invited him to her residence and, when he arrived, she came outside with a bat to confront him and a verbal altercation ensued. Defendant stated that he threw trash and a bottle. Subsequently, the victim threw the bottle back at him striking his car, which angered him. He told the deputy that it was after he exited his vehicle to confront the victim that the altercation turned physical. Defendant admitted that he grabbed the bat, but denied having struck the victim with it. Defendant also admitted to grabbing the victim's neck (which he later denied at trial), but said that it was not hard enough to cause her any type of injury or to lose consciousness. When the deputy asked him why he fled the scene, defendant said that he was afraid that if he was arrested, he would lose custody of his daughter. Defendant also acknowledged to the deputy that he should have driven away when things first started, but that his anger got the better of him.

After receiving treatment for his injuries, which included hematomas to the left side of his forehead, abrasions, bruising around his eyes and upper extremities,

a laceration to his chin, and a bite mark, defendant was released into the custody of Deputy Arceneaux and transported to the Jefferson Parish Correctional Center.

While incarcerated, defendant sent two letters to the victim. The first letter was addressed to the victim, but indicated that it was sent from someone whose name the victim did not recognize. She did, however, recognize the handwriting as that of defendant. In the letter, defendant apologized to the victim and Ms. Bahem, and asked that the victim drop the charges against him. The letter also expressed defendant's desire to have contact with the victim. Though the letter was not signed, the victim testified that it was "unmistakably" from defendant.

The second letter received by the victim was addressed to her and her family in defendant's handwriting and, again, indicated it was sent by someone whose name the victim did not recognize. Despite the fact that a protective order was in place prohibiting defendant from contacting the victim, she stated that she knew the letter was from defendant. The letter contained a stamped envelope addressed to defendant. In the letter, defendant again apologized for everything that had happened, and also apologized for the children having to experience it. A portion of the letter was directed to the victim's son, expressing how proud defendant was of him for having protected his mother.[2]

The victim testified that defendant contacted her via Facebook Messenger during the weekend prior to trial requesting that they meet at a place where she felt safe so that they could talk.[3] The victim responded by telling defendant not to contact her ever again and to stay away from her, her children, and her house.

---

[2] Defendant also sent letters to the victim's other children addressing them by their nicknames.

[3] The victim testified that she changed her telephone number after the incident. Defendant testified that it was his cousin, not himself, that texted the victim the weekend before trial because it was the victim's birthday.

### *The Prior August 15, 2017 Incident*

In August 2017, defendant arrived at the victim's Avondale home intoxicated and cussing. The parties had been arguing about how the victim allowed the father of her children into her home to cook for them, or whenever he desired, while defendant was at work. The victim told defendant to leave and she locked the door behind him. Defendant then began pounding on the front door and eventually broke the door off its hinges. Once inside, defendant kicked through an interior door as he searched through the house looking for someone else he believed to be there. In response, the victim threw defendant's clothes outside of the house and threatened to set them on fire. Defendant left the premises after the victim's mother, Ms. Hamilton, arrived on the scene having already summoned the police.

Deputy William Burandt from the JPSO responded to the emergency call.[4] Upon arrival at the scene, Deputy Burandt observed that the front door of the residence had been kicked open and that the "door frame had been splintered and was laying in the front room." He also observed that an interior door looked like it had been forced open. At that time, the victim reported to Deputy Burandt that defendant was her ex-boyfriend and, although he did not reside with her, he visited all of the time.[5] She provided the deputy with an address nearby (defendant's grandmother's home on Rosalie Court) where she claimed defendant stayed and could be located. The victim initially advised Deputy Burandt that she did not want to press charges against defendant, but did want him to fix the door. When

---

[4]    Deputy Burandt was also part of the investigation of the June 2019 incident for which defendant was convicted herein.

[5]    At trial, the victim admitted to the jury that she had lied to Deputy Burandt, and that defendant was actually living with her at the residence at the time of the incident.

defendant refused to repair the door, the victim contacted the Sheriff's Office and advised that she, in fact, did want to pursue charges against defendant.[6]

Deputy Burandt then returned to the victim's home and completed a criminal damage report. Defendant was not present so the deputy proceeded to look for him at his grandmother's house, where the victim indicated he would be, but defendant was not there. Based on the information the victim related to Deputy Burandt, a warrant was issued for defendant's arrest on a charge of unauthorized entry of an inhabited dwelling. After his arrest, defendant was questioned and he advised that he, in fact, was living with the victim, and had a key to the house. Later, when the case went to the Jefferson Parish District Attorney's Office for review, the parties had begun to reconcile. Consequently, at defendant's behest, the victim provided a notarized statement to the District Attorney's Office minimizing defendant's conduct and advising that defendant "did not mean to" kick in the doors. Considering the victim's statement, the District Attorney's Office did not pursue the charges against defendant.[7]

## DISCUSSION

In his sole assignment of error on appeal, defendant contends the district court erred in allowing the State to introduce evidence of his arrest on a false charge of unauthorized entry that was dismissed in 2017. Defendant contends the evidence is not relevant because it was based on a false charge made by the victim that the State later dismissed, and that admission of the evidence was highly prejudicial and denied him a fair trial. Specifically, defendant claims the evidence did not represent a "pattern of behavior" as it involved a single incident, and that the two incidents were dissimilar because one involved damage to property and the other involved injury to a person. Defendant maintains that the evidence was used

---

[6]     To the contrary, defendant testified at trial that he fixed the door the following day.
[7]     The JPSO detective that authored the arrest warrant, Chad Mackie, testified at trial that defendant would not have been charged with unauthorized entry if, in fact, he had been living at the house.

to prove that he was a man of bad character and acted in conformity therewith. He argues that allowing the evidence unfairly bolstered the victim's credibility while diminishing his own. Because the evidence was not relevant and more prejudicial than probative, defendant contends the district court's error in admitting the evidence warrants reversal and remand for a new trial.

In response, the State argues that other crimes evidence in this case was legally admissible under La. C.E. art. 412.4; independently relevant under La. C.E. art. 404(B)(1) to prove intent, motive, plan, preparation, knowledge, identity, and absence of mistake or accident; and, properly introduced to prove that defendant was the perpetrator of the crime. The State further argues that the other crimes evidence was relevant to show the volatile relationship between defendant and the victim, with an escalating level of aggression and violence on the part of defendant, and to refute defendant's claim that he acted in self-defense and that the victim was the aggressor. According to the State, defendant had the opportunity to cross-examine the State's witnesses and to offer his own testimony in regard to the evidence, and that the jury was instructed as to the limited purpose of the evidence. The State asserts that defendant failed to establish an abuse of discretion by the district court in admitting the evidence. Alternatively, the State submits that any error committed in the admission of the prior bad act would constitute harmless error.

A district court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *State v. Kiger*, 13-69 (La. App. 5 Cir. 10/30/13), 128 So.3d 552, 557. The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because the defendant has committed other such crimes in the past. *State v. Williams*, 09-48 (La. App. 5 Cir. 10/27/09), 28 So.3d 357, 363, *writ denied*, 09-2565 (La. 5/7/10), 34 So.3d 860; *see*

*also* La. C.E. art. 404(B)(1).  Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the "substantial risk of grave prejudice to the defendant."  *State v. Prieur*, 277 So.2d 126, 128 (La. 1973).

However, while the State may not admit evidence of other crimes to prove defendant is a person of bad character, evidence of prior crimes may be admitted if the State establishes an independent relevance aside from proving defendant's criminal character.  *State v. Brown*, 17-348 (La. App. 5 Cir. 12/20/17), 235 So.3d 1314, 1322, *writ denied*, 18-158 (La. 11/5/18), 256 So.3d 276, *cert. denied*, --- U.S. ---, 139 S.Ct. 2033, 204 L.Ed.2d 233 (2019).  Evidence of other crimes, wrongs or acts is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct, formerly referred to as *res gestae*, that constitutes an integral part of the act or transaction that is the subject of the present proceeding.  *See* La. C.E. art. 404(B)(1); *State v. Joseph*, 16-349 (La. App. 5 Cir. 12/14/16), 208 So.3d 1036, 1046, *writ denied*, 17-77 (La. 4/7/17), 218 So.3d 109.  If the State intends to offer such evidence, it must provide the defendant with notice and a hearing before trial. *State v. Napoleon*, 12-749 (La. App. 5 Cir. 5/16/13), 119 So.3d 238, 242.  Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense.  *State v. Martin*, 377 So.2d 259, 263 (La. 1979).

Additionally, La. C.E. art. 412.4 provides:[8]

> A. When an accused is charged with a crime involving
>    abusive behavior against a family member, household
>    member, or dating partner or with acts which
>    constitute cruelty involving a victim who was under
>    the age of seventeen at the time of the offense,

---

[8]    La. C.E. art. 412.4 was enacted by 2016 La. Acts 399, § 1, and amended to encompass abusive behavior against dating partners by 2017 La. Acts 84, § 4, which amendment became effective on August 1, 2017.  The article was amended again by Acts 2020, No. 101, § 3.

evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a family member, household member, or dating partner or acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

C. This Article shall not be construed to limit the admissibility or consideration of evidence under any other rule.

D. For purposes of this Article:

(1) "Abusive behavior" means any behavior of the offender involving the use or threatened use of force against the person or property of a family member, household member, or dating partner of the alleged offender.

(2) "Dating partner" means any person who is involved or has been involved in a sexual or intimate relationship with the offender characterized by the expectation of affectionate involvement independent of financial considerations, regardless of whether the person presently lives or formerly lived in the same residence with the offender. "Dating partner" shall not include a casual relationship or ordinary association between persons in a business or social context.

(3) "Family member" means spouses, parents and children, stepparents, stepchildren, foster parents, and foster children.

(4) "Household member" means any person having reached the age of majority presently or formerly living in the same residence with the offender as a spouse, whether married or not, or any child presently or formerly living in the same residence with the offender, or any child of the offender regardless of where the child resides.

This Court recently addressed the application of La. C.E. art. 412.4 in *State v. Thomas*, 19-582 (La. App. 5 Cir. 7/29/20), 300 So.3d 517, *writ denied*, 20-1503 (La. 3/2/21), --- So.3d ---, 2021 WL 791074, stating:

> Though little jurisprudence exists regarding the application of La. C.E. art. 412.4, in 2001, the Louisiana legislature enacted a similar provision, La. C.E. art. 412.2, which allows the admission of evidence in sex offense cases of other crimes, wrongs or acts involving sexually assaultive behavior or which indicate a lustful disposition toward children. In *State v. Wright*, 11-141 (La. 12/6/11), 79 So.3d 309, 317, the Louisiana Supreme Court pointed out that in enacting La. C.E. 412.2, "the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility." La. C.E. art. 412.2 was enacted to loosen restrictions on other crimes evidence. *Id.* at 317; *State v. Evans*, 19-237, p. 9 (La. App. 5 Cir. 6/3/20), --- So.3d ---, 2020 WL 2893671. Thus, pursuant to La. C.E. art. 412.2, evidence of a prior sexual offense indicating that the defendant has a lustful disposition toward children is admissible if relevant and if the probative value outweighs the prejudicial effect. *Id.*
>
> Considering the similarity between La. C.E. arts. 412.2 and 412.4, we find that evidence of prior acts of domestic abuse and cruelty to juveniles is also admissible if relevant and the probative value outweighs the prejudicial effect. The admissibility of evidence under this article is not limited to those actions that are identical or similar in nature to the charged crime. *See* Louisiana Practice Evidence Art. 412.4, Evidence of Similar Crimes, Wrongs, or Acts in Domestic Abuse Cases and Cruelty Against Juveniles Cases (2019 ed.).

Further, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or waste of time. *See* La. C.E. art. 403. Any inculpatory evidence, however, is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Rodgers*, 16-14 (La. App. 5 Cir. 10/26/16), 202 So.3d 1189, 1201, *writs*

*denied*, 16-2189 (La. 9/15/17), 225 So.3d 479 and 16-2093 (La. 1/29/18), 235 So.3d 1104. As used in the balancing test, prejudice limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id.*; *Thomas*, 300 So.3d at 527-28. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged. *State v. Smith*, 19-607 (La. App. 5 Cir. 1/21/20), --- So.3d ---, 2020 WL 356010, *writ denied*, 20-328 (La. 5/1/20), 295 So.3d 945.

The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. *State v. Miller*, 10-718 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 187, *writ denied*, 12-282 (La. 5/18/12), 89 So.3d 1191, *cert. denied*, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013). Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence will not be disturbed. *State v. Le*, 13-314 (La. App. 5 Cir. 12/12/13), 131 So.3d 306, 317, *writ not considered*, 14-934 (La. 6/3/16), 192 So.3d 757. On appeal, an improper reference to other crimes evidence is subject to the harmless error rule; that is, whether the verdict actually rendered in the case was surely unattributable to the error. *State v. Nelson*, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 804-05, *writ denied*, 02-2090 (La. 2/21/03), 837 So.2d 627.

Evidence of other crimes, wrongs or acts may be introduced to establish proof of motive. For evidence of motive to be independently relevant, it must be factually peculiar to the victim and the charged crime. *State v. Rose*, 06-402 (La. 2/22/07), 949 So.2d 1236, 1244. Additionally, in a case in which the State sought to elicit testimony as to defendant's motive, the Supreme Court observed, "Clearly, evidence that defendant and his ex-wife, the person to whom defendant's alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper was relevant as tending to show the commission of the

offense … ."  *Id.* at 1245 (quoting *State v. Walker*, 394 So.2d 1181, 1184 (La. 1981)).  *See also State v. Welch*, 615 So.2d 300, 303 (La. 1993) ("The state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant … . The primary purpose of the evidence [of prior acts of violence or threats of violence] was not to prove Welch's bad character but to illustrate the volatile nature of his relationship with the victim … .")

In *State v. Mitchell*, 18-326 (La. App. 5 Cir. 12/27/18), 263 So.3d 967, the defendant shot and killed his ex-wife after an argument about the victim's infidelities.  On appeal, the defendant challenged the district court's admission of other crimes evidence at trial, consisting of several prior incidents of domestic abuse between himself and the victim, pursuant to La. C.E. arts. 404(B)(1) and 412.4.  *Id.* at 971.  Of the five prior incidents introduced, two resulted in guilty pleas, one charge was dropped, and the final two matters were pending at the time of the murder trial.  The incidents involved various physical altercations and threats, as well as one incident where the defendant punctured the victim's tires.  *Id.* at 971-72.  This Court found that the prior incidents of domestic abuse were relevant to show the defendant's motive for committing the murder, and that the evidence placed the defendant's shooting of the victim in its proper context and demonstrated to the jury the volatile nature of the parties' relationship.  *Id.* at 973.  In determining that the probative value of the evidence outweighed its prejudicial effect, we found that the evidence was independently relevant to show a pattern of domestic abuse of the victim by the defendant.  We concluded that there was no abuse of discretion by the district court, who gave a limiting instruction to the jury prior to its deliberations, and that even if improperly admitted, the evidence presented by the State was sufficient to prove the defendant's guilt.  *Id.*

In *State v. Porter*, 19-221 (La. App. 3 Cir. 8/14/19), 279 So.3d 1010, the defendant was charged with the second degree murder of his wife. The State sought the admission of evidence relating to three separate occurrences in which the police were called to the couple's home in response to the defendant physically attacking his wife. The district court ruled the first incident inadmissible, the second admissible only for purposes of refuting the defendant's potential claim of self-defense, and the third admissible. *Id*. at 1012. On appeal, the Third Circuit found that the district court's exclusion and limitation of two of the prior incidents constituted an abuse of its discretion. *Id*. at 1021. The Third Circuit noted that both incidents were relevant as prior incidents of domestic abuse between the parties and that, considered altogether, the evidence of the prior incidents was highly probative in establishing the parties' volatile relationship, that there was a pattern of abuse, and that the level of violence had escalated. *Id*. The appellate court stated that the incidents also established that the defendant had a pattern of denying accountability or claiming self-defense. *Id*. After carefully reviewing the evidence in light of La. C.E. arts. 403 and 412.4, the Third Circuit found that the probative value of the evidence outweighed any danger of unfair prejudice to the defendant. *Id*.

Similarly, in *State v. Piper*, 18-1796 (La. App. 1 Cir. 9/27/19), 287 So.3d 13, the defendant was convicted of domestic abuse battery involving strangulation and unauthorized entry of an inhabited dwelling as a result of an incident wherein he entered a former girlfriend's apartment, held her under the water in a bathtub, and choked her. *Id*. at 18. On appeal, the defendant argued that the district court abused its discretion in allowing the State to present evidence of four other crimes involving the same victim. The defendant was charged in one prior incident with domestic abuse battery by strangulation and another with domestic abuse battery. In another incident, the defendant forcefully pulled the victim outside of her

apartment and attempted to get her to leave the complex with him. The final prior incident involved an attack on the victim by defendant for which he was taken to parish prison. The First Circuit found nothing improper in the district court's determination that the other crimes evidence was admissible. *Id*. at 20. Specifically, the court stated that all of the other crimes evidence was introduced at trial through the victim, who was both the victim in the current proceedings and the victim in her past confrontations with the defendant. *Id*. Additionally, the court determined that the other crimes evidence had independent relevance to the issues of motive, opportunity, and intent, and that the probative value was not substantially outweighed by the danger of unfair prejudice. *Id*. The court concluded that even if the other crimes evidence had been inadmissible, the admission of such evidence would have been harmless error. *Id*. at 21.

Lastly, in *State v. Mayeux*, 19-369 (La. 1/29/20), --- So.3d ---, *cert. granted, judgment vacated on other grounds*, *Mayeux v. Louisiana*, 590 U.S. ---, 141 S.Ct. 225, 208 L.Ed.2d 1 (2020), the defendant was convicted of the second degree murder of his wife. At trial, the district court allowed the State to introduce evidence of prior incidents where the defendant abused and threatened his wife as well as his previous romantic partners, which abuse included incidents of choking. The court of appeal thoroughly examined the admissibility of the other crimes evidence and found no abuse of the district court's discretion. The Supreme Court determined that it had "little to add to that court's analysis, other than to note that … [the] defendant's previous abuse, including choking, of his spouse and his dating partners was admissible under [La. C.E. art.] 412.4." *Id*. at **6-7.

In the instant case, we find that the evidence of the prior August 15, 2017 incident placed the charged offense in its proper context and was independently relevant, not to prove defendant's bad character, but rather, to illustrate to the jury the volatile nature of the relationship existing between defendant and the victim.

The evidence also demonstrated that defendant had aggressive tendencies toward the victim when intoxicated and feeling as if he had been disrespected in the relationship and provided context as to why the victim may have armed herself with a bat when being confronted by him. Absent the background information related to the prior incident, defendant's conduct on the date of the charged offense may have appeared to the jury to be without motive and an otherwise isolated act attributable not to aggression committed with criminal intent on defendant's part, but instead, an act of self-defense. The record shows that the district court gave a limiting instruction to the jury prior to its deliberations regarding the evidence. Under these circumstances, we find that the probative value of the evidence outweighed the danger of unfair prejudice and that the district court did not abuse its discretion in allowing the State to present the evidence.

Further, we find that any error by the district court in permitting the evidence of the August 15, 2017 incident to be harmless. The erroneous admission of other crimes evidence is subject to harmless-error analysis. *State v. Massey*, 11-358 (La. App. 5 Cir. 3/27/12), 97 So.3d 13, 40, *writ denied*, 12-993 (La. 9/21/12), 98 So.3d 332. An error is harmless when the verdict is "surely unattributable to the error." *Id.* Here, the State presented sufficient evidence to prove defendant's guilt as to domestic abuse battery by strangulation without its admission. In light of the evidence presented at trial of defendant's guilt, including the testimony of defendant and the victim, the eyewitness testimony of the victim's children and Ms. Bahem, the testimony of the investigating officers, and photographs of the victim, we find that the guilty verdict was surely unattributable to any possible error in admitting evidence of the prior August 15, 2017 incident.

## *ERRORS PATENT DISCUSSION*

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). Upon review, the following errors have been detected.

### *Illegally Lenient Enhanced Sentence*

The district court imposed an enhanced sentence upon defendant that is illegally lenient. La. R.S. 14:35.3(C) provides that at least forty-eight hours of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. Defendant stipulated to being a third-felony offender, but did not agree to a specified sentence. The district court imposed an enhanced sentence of four years imprisonment without the benefit of probation or suspension of sentence, but did not restrict parole. While La. R.S. 15:529.1(G) requires all multiple offender sentences to be imposed without benefit of probation or suspension of sentence, it does not impose a parole restriction. Rather, when a defendant is sentenced as a multiple offender, it is the penalty provision for the underlying offense that imposes a parole restriction. *State v. Bruins*, 407 So.2d 685, 687 (La. 1981); *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280.

Generally, when a district court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, 801. Here, the district court's failure to impose the statutory restriction is not cured by La. R.S. 15:301.1 because the portion of the sentence to be served without the benefit of parole is left to the discretion of the district court. Therefore, we remand this case for resentencing with instructions to the district court to impose defendant's enhanced sentence in accordance with the provisions of the underlying statute, La. R.S. 14:35.3(C), as it relates to the restriction of parole. *See State v. Shelby*, 18-186

(La. App. 5 Cir. 12/27/18), 263 So.3d 1223, 1228-29; *State v. Napoleon*, 11-530 (La. App. 5 Cir. 1/24/12), 87 So.3d 127; *State v. Tapps*, 02-574 (La. App. 5 Cir. 10/29/02), 832 So.2d 996, 1004, *writ denied*, 02-2921 (La. 4/21/03), 841 So.2d 789.

### *Correction of the Uniform Commitment Order*

The State of Louisiana Uniform Commitment Order ("UCO") states that defendant pled guilty to domestic abuse battery by strangulation. However, defendant was unanimously convicted by a jury of the charge. Therefore, we also remand the matter to the district court for correction of the UCO and direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See State v. Anthony*, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 930-31; *State v. Gillin*, 16-149 (La. App. 5 Cir. 9/22/16), 202 So.3d 1175, 1177.

### *Post-Conviction Relief Advisal*

Although the minute entry reflects that defendant was properly advised of the time period for seeking post-conviction relief pursuant to La. C.Cr.P. art. 930.8, our review of the transcript shows a proper advisal as to post-conviction relief was not provided. Where there is a discrepancy between the transcript and the minute entry, the transcript generally prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). La. C.Cr.P. 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief. Here, according to the transcript, during the multiple bill colloquy, the district court asked, "And you also understand that you have two years after the judgment of conviction becomes final and thirty days to file for post-conviction relief and thirty days to appeal the sentence in this matter? You understand that,

sir?" This is an incomplete advisal. The record does not reflect that a further advisal was provided at the sentencing hearing.

It is well-settled that if a district court fails to advise, or provides an incomplete advisal pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. *State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022. Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State v. Barnett*, 18-254 (La. App. 5 Cir. 4/3/19), 267 So.3d 209, 235.

***DECREE***

Accordingly, for the reasons assigned, defendant's conviction is affirmed. His sentence is vacated, and the case is remanded for resentencing in accordance with La. R.S. 14:35.3(C) as it relates to the restriction of parole. The district court is further instructed to correct the Uniform Commitment Order consistent with this opinion.

**CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING; REMANDED WITH INSTRUCTIONS.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**APRIL 28, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 20-KA-221

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)                BERTHA M. HILLMAN (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
CHRISTINA FISHER (APPELLEE)
KELLIE M. RISH (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053